**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0491n.06

No. 08-1262

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 14, 2009**
LEONARD GREEN, Clerk

NEAL FORD,                                                )
                                                         )
     **Plaintiff-Appellant,**                            )       **ON APPEAL** FROM THE
                                                         )       UNITED STATES DISTRICT
v.                                                       )       COURT FOR THE EASTERN
                                                         )       DISTRICT OF MICHIGAN
SECURITAS SECURITY SERVICES                              )
USA, INC.,                                               )
                                                         )       **O P I N I O N**
     **Defendant-Appellee.**                             )
_____)

**Before: BATCHELDER, DAUGHTREY, and MOORE, Circuit Judges.**

     **KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Neal Ford ("Ford"), pro

se, appeals the district court's grant of summary judgment for Defendant-Appellee Securitas Security

Services USA, Inc. ("Securitas") in this action for race-based employment discrimination in violation

of Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. The

district court found that Ford failed to establish a prima facie case of discrimination and that

Securitas articulated a nondiscriminatory reason for failing to hire Ford. On appeal, Ford argues that

the district court erred in finding that no genuine issue of material fact existed as to whether

Securitas discriminated against Ford in failing to hire him. For the reasons discussed below, we

**REVERSE** the district court's grant of summary judgment in favor of Securitas and **REMAND** for

further proceedings consistent with this opinion.

## I. BACKGROUND

In 1999, Ford, an African-American male, began working as a security officer for Ford Motor Company at its plant in Sterling Heights, Michigan. When this facility came under the control of Visteon Corporation ("Visteon"), Ford continued in his position, providing security and fire-protection services at the plant. Throughout his employment, Ford received on-the-job training and completed a number of certifications. Around June 2005, Visteon decided to outsource its security function and contracted with Securitas for security services. All security officers, including Ford, were terminated by Visteon and invited to apply for employment with Securitas.

Of the fourteen security officers employed by Visteon, only Ford and three others applied for employment with Securitas. Of these four, two of the applicants were white, and two were African-American. The two white applicants were hired by Securitas as security fire officers while the two African-American applicants were denied employment. Overall, of the twenty-three employees hired by Securitas for security services at Visteon, ten were African-American. All five of the employees hired for the higher-level position of fire officer, however, were white.

As part of the application process, Ford was required to complete a character-analysis survey known as the Stanton Survey. Although Ford's answers satisfied company guidelines, his response to the survey was flagged for a follow-up interview with a human-resources representative, Kimberly Johnson. It appears that Johnson then submitted her report on the interview to Julie Doricott, a supervisor with hiring authority.[1] Ford was then notified that his application had been denied.

---

[1]Ford does not recall the name of the representative who interviewed him, and Securitas does not appear to have a record of who conducted the interview. Based on the deposition testimony of Ford and Johnson, it is likely that Johnson conducted the interview. Johnson also testified that it was her practice to submit the interview responses to Doricott, who then made the hiring decision.

Although not included as a term of Securitas's contract with Visteon, Securitas claims that Visteon had informed Securitas that it would require all fire officers to possess the Firefighter I and Firefighter II state certifications. These certifications had not been required by either Ford Motor Company or by Visteon. While the two white applicants who were hired both possessed the Firefighter I and II certifications, Ford did not. Securitas claims that Ford was unqualified for the fire officer position because he did not have these certifications and that, even if he had the certifications, he would not have been hired because of Securitas's concerns with his Stanton Survey results and a poor follow-up interview.[2]

In June 2006, Ford filed this lawsuit, alleging both age and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act (the "ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.* Ford has since voluntarily dismissed the age-discrimination claims. Securitas then moved for summary judgment on all claims, which was granted by the district court. Ford now appeals.

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[2]The other African-American applicant did have the Firefighter I and II certifications but was not hired because she refused to sign the employment application.

P. 56(c). "When we review a motion for summary judgment, we must view all facts and inferences in the light most favorable to the non-moving party." *Hamilton*, 556 F.3d at 433. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B. Race Discrimination

"Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Rodriguez v. FedEx Freight East, Inc. (In re Rodriguez)*, 487 F.3d 1001, 1007 (6th Cir. 2007) (quoting *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)). "When, as is the case here, a plaintiff presents only indirect evidence of disparate treatment based on race, we analyze the claim under the *McDonnell Douglas* burden-shifting approach." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination. *Id*. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a legitimate nondiscriminatory reason for the adverse employment action. *Id*. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the defendant's proffered rationale was merely pretext for unlawful discrimination. *Id*. at 704. "'On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Id*. at 703 (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)).

4

### 1. Plaintiff's Prima Facie Case

Although the requirements for establishing a prima facie case of discrimination are context-dependent, "'[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 703 (quoting *Macy*, 484 F.3d at 365). We have previously stated that a plaintiff must show the following four elements to establish a prima facie case: "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal quotation marks omitted).

The parties do not dispute that Ford has established the first and second elements of his prima facie case: as an African-American, he is a member of a protected class, and he suffered an adverse employment action when he was denied employment by Securitas. To meet the third element, Ford asserts that he was qualified due to his employment with Visteon in the same position for six years and the various certifications and training he received during that time. On the fourth element, Ford asserts that he was treated differently than the two white employees hired by Securitas, who were similarly situated because they all had previously worked in the same position at Visteon. The district court, however, found that Ford did not meet the last two elements. Regarding the third element, Securitas argues that the district court correctly found that Ford was not qualified for the position because he did not have Firefighter I and II certification. On the fourth element, Securitas argues that the two white applicants were not similarly situated, because, unlike Ford, they both had

5

these certifications. Both of these arguments, however, rest on Securitas's assertion that Firefighter I and II certification was a requirement for the security fire officer position. Because, however, Securitas has not presented admissible evidence showing that these certifications were a job requirement, the district court erred in finding no genuine issue of material fact as to whether Ford established a prima facie case of discrimination.

The only evidence presented to establish that Visteon required Firefighter I and II certifications was the testimony of William Durkee, Securitas's regional account director:

> Three weeks out from us taking over the site, the client contact or the responsible person, John Lawson, said that due to the fact that they have a lot of fires at that facility, they wanted trained fire officers assigned. That was not in the contract [with Visteon]. We hadn't planned for that, so we were kind of in a bind. We didn't have trained—he wanted trained fire officers which had graduated, which had Fire 1 and Fire 2 officers, you know, fire officer certification.

Durkee Dep. at 12. This evidence, however, is inadmissible hearsay. Through Durkee's testimony, Securitas offered the statement of John Lawson, a Visteon representative, that Visteon was requiring Firefighter I and II certifications. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Despite Securitas's argument to the contrary, Lawson's statement was offered for the truth of the matter asserted. In its motion for summary judgment, Securitas cites Durkee's deposition testimony as the only evidence to support the assertion that "[t]he contract with Visteon required that Securitas have a fire officer on every shift that held the Firefighter I and II certifications." Def. Mot. Summ. J. at 5. Similarly, Securitas's reply brief in support of summary judgment cites this testimony and states, "The deposition of Bill Durke [sic] (defendant's Exhibit I) establishes that the Firefighter I and II certifications were required for the position of fire officer at the Visteon Sterling Heights facility." Def. Reply Br. Support Mot. Summ. J. at 1. Moreover, it

6

is clear that the district court accepted Lawson's statement, offered through Durkee's testimony, for its truth: "According to the testimony of Defendant's manager at the time, Defendant was required by Ford to hire officers who possessed Firefighter I and II state certifications." Dist. Ct. Op. at 5.[3] As inadmissible hearsay, this evidence "cannot be considered on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *accord* Fed. R. Civ. P. 56(e).[4]

Because Ford did not object to Durkee's testimony during the deposition or during summary judgment, we have limited authority to review the error:

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and we will review such objections only to avoid a gross miscarriage of justice.

*Wiley*, 20 F.3d at 226; *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007) (quoting *Wiley*). We believe, however, that it would be a gross miscarriage of justice to ignore that Securitas has offered no admissible evidence that Firefighter I and II certification was a job requirement. Because there is no other evidence that Ford was not qualified for the job or not similarly situated to the two white applicants with respect to the job qualifications, Ford has raised

---

[3]We do not rule out the possibility that Durkee's testimony as to Lawson's statement may be admissible if offered as evidence of its effect on the hearer rather than for the truth of the statement. It is clear, however, that it was not offered by Securitas or used by the district court for this limited purpose.

[4]This hearsay evidence is particularly troublesome here, where it adds a completely new requirement to the written contract between Securitas and Visteon and there is no evidence that Visteon sought to amend the contract, neither Securitas nor Visteon memorialized the additional requirement in an internal memorandum or email, and there is no affidavit or testimony by Lawson regarding this requirement.

at least a material question of fact, and summary judgment was therefore not appropriate on this ground.

### 2. Defendant's Legitimate Nondiscriminatory Reason

Securitas also has failed to produce evidence that it had a legitimate nondiscriminatory reason for not hiring Ford. Securitas may meet its burden by "offering admissible evidence sufficient for the trier of fact to conclude" that it had a legitimate nondiscriminatory reason for rejecting Ford. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Securitas asserts the lack of certification and the poor Stanton Survey results and follow-up interview as legitimate nondiscriminatory reasons for not hiring Ford. Neither of these rationales, however, is supported by sufficient admissible evidence.

As discussed above, Securitas's evidence that applicants were required to have Firefighter I and II certifications was inadmissible hearsay and, therefore, cannot support a motion for summary judgment. If these certifications were not a requirement for the job, then Ford's failure to be certified was not a legitimate reason for not hiring him. Similarly, Securitas has offered virtually no evidence of Ford's poor performance on the Stanton Survey and in the follow-up interview. Nothing in the record contains Ford's actual answers to the survey, any memorialization of the interview, or any documentation of the reasons for Ford's rejection.[5] The only evidence offered was the deposition

---

[5]Before the district court and on appeal, Securitas refers to the Stanton Survey results as being part of "Exhibit B" to its motion for summary judgment. Securitas Br. at 3; Def. Mot. Summ. J. at 5; Def. Reply Br. Support Mot. Summ. J. at 3. Although the Index of Exhibits filed by Securitas with its motion for summary judgment states that Exhibit B contains "Plaintiff's Stanton Survey Results," this evidence was not attached to the motion or otherwise entered into the record. Exhibits A and B appear to have been omitted by Securitas, as the exhibits are labeled "C" through "I."

The only evidence of Ford's Stanton Survey results was the last page of Ford's employment application, which was submitted as an exhibit to Ford's response to Securitas's motion for summary judgment. This short summary, however, states only that Ford "MEETS minimum company

testimony of Kimberly Johnson, who presumably conducted Ford's follow-up interview. Johnson, who was deposed two years after the relevant events occurred, testified that she could not remember interviewing Ford, could not say whether she had actually interviewed him, could remember no specific questions or any concerns raised by Ford's answers, could not recall Securitas's decision not to hire him, and did not appear ever to have had access to Ford's survey answers. According to Johnson's testimony, it was her supervisor, Julie Doricott, who made the hiring decisions, and Johnson did not know how Doricott made these decisions. Securitas, however, has not offered an affidavit from Doricott or any other evidence showing on what basis Doricott decided not to hire Ford. Although an employer's burden to establish a legitimate nondiscriminatory reason is not onerous, the employer must offer at least some evidence of its rationale. Having offered virtually no evidence to support this reason, Securitas has not met its burden. Because Ford met his burden of establishing a prima facie case of discrimination and Securitas has not met its burden to present evidence of a legitimate nondiscriminatory reason, Ford need not show that this reason was pretextual.

### III. CONCLUSION

Because Ford has presented a genuine issue of material fact as to whether Securitas discriminated against him on the basis of his race, we **REVERSE** the district court's grant of summary judgment in favor of Securitas and **REMAND** for further proceedings consistent with this opinion.

---

guidelines" and lists three follow-up questions about his supposed admission to past theft and potential to disregard company policies.