NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0060n.06

No. 12-1794

**FILED**
Jan 23, 2014
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ARTHUR AND DOROTHY LAUDERDALE, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| WELLS FARGO HOME MORTGAGE, HSBC | ) | COURT FOR THE EASTERN |
| BANK, N.A. and FIRST AMERICAN FINANCIAL | ) | DISTRICT OF MICHIGAN |
| CORPORATION a/k/a FIRST AMERICAN FIELD | ) | |
| SERVICES AND PROPERTY PRESERVATION | ) | OPINION |
| COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**BEFORE:** **MERRITT, SUTTON, and STRANCH, Circuit Judges.**

**STRANCH, Circuit Judge.** Arthur and Dorothy Lauderdale brought a number of statutory and common law claims against Wells Fargo Home Mortgage and HSBC Bank, N.A. (collectively, "Wells Fargo," the holder of the mortgage on plaintiffs' house on Vernor Highway) and against First American Financial Corporation. The Lauderdales alleged that defendants improperly removed personal property from their Vernor house. They appeal the district court's grant of summary judgment to the defendants. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

In 2004, the Lauderdales took out a mortgage with Wells Fargo for a house on Vernor Highway in Detroit. In 2008, the Lauderdales defaulted on their mortgage and the defendants

initiated foreclosure proceedings. Wells Fargo hired First American to provide asset management services for the Vernor house and First American then hired D&D Innovations (D&D) to secure and preserve the house. At some point before the foreclosure sale, Wells Fargo assigned the mortgage to HSBC.

On September 17, 2008, Defendant D&D, acting pursuant to its contract with Defendant First American, arrived at Plaintiffs' property to perform a "secure." This included talking to neighbors about the status and occupancy of the property and changing the locks on the house. The Lauderdales' interrogatory answers stated that Mr. Lauderdale was present at the time and that he spoke to the individuals who had come to secure the property. The individuals gave him a phone number to call to reach a representative of First American. Mr. Lauderdale called and was told he would get a call back, but never did. In their amended complaint, plaintiffs allege that D&D representatives changed the locks, refused the plaintiffs entry, and removed a number of items from the Vernor home. Representatives of Wells Fargo sent a letter to the Lauderdales dated October 14, 2008 notifying them that Wells Fargo intended to foreclose on the Vernor property. The property was subsequently sold at a Sheriff's sale on November 12, 2008.

The plaintiffs filed their complaint against Wells Fargo and First American in Wayne County Circuit Court in Michigan on July 19, 2010, and the defendants subsequently removed the case to the Eastern District of Michigan. On February 28, 2011, First American filed a third-party complaint against D&D. On March 1, the plaintiffs responded by filing an amended complaint naming D&D as a Defendant. D&D was never served in this litigation and at some point before summary judgment, it went out of business. The district court dismissed D&D as a defendant without prejudice because it had not been served or filed an appearance and granted summary judgment to Wells Fargo and First American.

## II. ANALYSIS

This court reviews a district court's grant of summary judgment de novo, and reviews evidentiary findings for abuse of discretion. *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012). In considering a motion for summary judgment, the district court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir.2013) (internal quotation marks omitted); see Fed. R. Civ. P. 56(a), (c). Where the defendant does not have the burden of proof on an issue, he need only demonstrate that the plaintiff cannot sustain her burden as to an essential element of the case. *Minadeo v. ICI Paints,* 398 F.3d 751, 761 (6th Cir. 2005). Once that occurs, the plaintiff "must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis omitted).

### A. Decision Below

The Lauderdales brought six claims against the defendants: (1) interference with their possessory interest in the Vernor house without obtaining a court order to do so in violation of Michigan's Anti-Lockout Statute, Michigan Compiled Laws (MCL) § 600.2918 (amended Oct. 9, 2013); (2) common law conversion; (3) trespass to chattels; (4) statutory conversion; (5) unjust enrichment; and (6) violations of the Michigan Consumer Protection Act (MCPA). In

opposition to summary judgment, the Lauderdales submitted unsworn interrogatory answers, but no sworn affidavits or depositions.

In the summary judgment order, the district court held that the Lauderdales' interrogatory answers were not properly authenticated and thus could not be considered on summary judgment. After rejecting the interrogatory answers, the district court dismissed the conversion, trespass to chattels, and unjust enrichment claims because the Lauderdales did not produce any other admissible evidence supporting their allegations that could be considered on summary judgment. The district court also found that the anti-lockout claim was barred by the statute of limitations and that the MCPA was not applicable to the conduct at issue. Plaintiffs assert all these claims on appeal.

## B. Michigan's Anti-Lockout Statute

On appeal, Plaintiffs allege that the defendants violated Michigan's Anti-Lockout Statute, which provides that "[a]n action for damages . . . shall be commenced within 1 year from the time the cause of action arises or becomes known to the plaintiff." MCL § 600.2918(6). Under Michigan's discovery rule, the statute of limitations begins to run "when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered, the two later occurring elements: (1) an injury, and (2) the causal connection between plaintiff's injury and the defendant's breach." *Moll v. Abbott Labs.*, 506 N.W.2d 816, 824 (Mich. 1993). The purpose of the discovery rule is to avoid extinguishment of a cause of action before the plaintiff is even aware of the possible cause of action. *Lemmerman v Fealk*, 534 N.W.2d 695, 698 (Mich. 1995).

Michigan has applied a discovery rule for certain causes of action but rejected it for others. *Stephens v. Dixon*, 536 N.W.2d 755, 757–58 (Mich. 1995) (rejecting the discovery rule

for claims of ordinary negligence). Michigan courts have not ruled on the applicability of the discovery rule to the Anti-Lockout Statute. If the discovery rule is not applicable, the Lauderdales' claim is time-barred because they filed the present action almost two years after the alleged events, well beyond the statute's one-year limitations period. However, even if the discovery rule applies, the plaintiffs' claim is still untimely.

Mr. Lauderdale became aware of the alleged violation of the Anti-Lockout Statute on September 17, 2008, when agents of First American came to the Vernor house to secure it. The Lauderdales argue that the one-year statute of limitations did not begin to run on their claim until February 28, 2011, when First American filed a third-party complaint revealing that D&D was the agent that violated their rights. But D&D was never served and was dismissed from the litigation. Thus the cause of action against First American and Wells Fargo arose or became known in September of 2008 when the Lauderdales discovered the causal connection between their injury and these defendants' alleged responsibility for changing their locks. The Lauderdales' complaint, filed on July 19, 2010, 10 months past the one-year filing deadline, was late. MCL § 600.2918(6).

The Lauderdales request equitable tolling against all defendants on the basis that defendants failed to tell the Lauderdales of D&D. The doctrine of equitable tolling allows courts to toll a statute of limitations "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). The Lauderdales provide no evidence that they made any effort to discover who actually came to secure the Vernor house on September 17, 2008 until nearly two years after the discovery of the injury.

They have provided no basis for equitable tolling; the anti-lockout claim is thus barred by the statute of limitations.

## C. Conversion, Trespass to Chattels, and Unjust Enrichment

Plaintiffs also contend that defendants are vicariously liable for common law and statutory conversion, and, in the alternative, for trespass to chattels. "In Michigan, conversion is defined generally as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Sarver v. Detroit Edison Co.*, 571 N.W. 2d. 759, 761 (Mich. Ct. App. 1997). An unlawful lockout can be the basis of a conversion claim. *J. Franklin Interests, L.L.C. v. Mu Meng*, No. 296525, 2011 WL 4501841, at *7–10 (Mich. Ct. App. Sept. 29, 2011). "A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property." *Mackie v. Bollore S.A.*, No. 286461, 2010 WL 673295, at *4 (Mich. Ct. App. Feb. 25, 2010). Citing *Burns v. Kirkpatrick*, 51 N.W. 893 (Mich. 1892), the Lauderdales correctly argue that the question in the trespass to chattels claim is not whether the defendants had the right to enter the premises, but whether the defendants wrongly exercised dominion over the Lauderdale's personal property. *See Price v. High Pointe Oil Co., Inc.*, 828 N.W.2d 660, 669 n.8 (2013) ("[T]respass to chattel actually deprives the owner of the chattel and, by necessity, causes actual damage.").

In addition to the conversion and trespass to chattels claims, the plaintiffs assert a claim of unjust enrichment. In order to establish unjust enrichment, a plaintiff must prove: (1) that the defendant received a benefit from the plaintiff and (2) that it is inequitable for the defendant to retain the benefit. *Wysong Corp. v. M.I. Indus.*, 412 F.Supp.2d 612, 624–25 (E.D. Mich. 2005).

The district court dismissed these claims because the Lauderdales failed to produce evidence in support of their allegations. The Lauderdales produced no sworn affidavits or depositions that could be considered during summary judgment. *See* Fed. R. Civ. P. 56(c). During the summary judgment hearing, First American objected to consideration of the Lauderdales' interrogatory answers because Mr. Lauderdale signed them with the statement that they were "true to the best of my information, knowledge and belief." The district court sustained the objection on the grounds that the interrogatory answers were not sworn or made under penalty of perjury as required by 28 U.S.C. § 1746 and thus could not be considered during summary judgment.

On appeal, the Lauderdales contend that the interrogatory answers included sufficient evidence in support of their allegations to defeat summary judgment and should have been considered by the district court. They further contend that the defendants should have been equitably estopped from objecting to the interrogatory answers at the summary judgment hearing because the objection was not included in their motion for summary judgment.

Federal Rules of Civil Procedure Rule 56 provides that interrogatory answers may be considered as evidence during summary judgment. *See Alexander*, 576 F.3d at 558. In order to be considered, however, such evidence must be sworn or made under the penalty of perjury. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *see also Pollock v. Pollock*, 154 F.3d 601, 611 n. 20 (6th Cir. 1998) (noting that unsworn declarations cannot be considered as evidence for summary judgment unless "made under penalty of perjury, certified as true and correct, dated, and signed." (citing 28 U.S.C. § 1746)).

The Lauderdales provide no caselaw suggesting that a district court abuses its discretion by not excluding an unsworn declaration from the requirements of 28 U.S.C. §1746. In addition, a party certainly can object to the admissibility of evidence during a summary judgment hearing. *See* Fed. R. Civ. P. 56(c)(2); *Cf. Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *3 (6th Cir. Feb. 2, 2009) (finding that objection to certain evidence during a summary judgment hearing contests the evidence and preserves the issue for appeal). As submitted, the interrogatory answers did not include the statutorily-required affirmation, and thus the district court did not abuse its discretion by refusing to consider them.

The district court also did not consider the police report submitted by the Lauderdales on summary judgment, which included Mr. Lauderdale's list of the items allegedly stolen from the house. Evidence submitted in opposition to summary judgment must be admissible at trial. *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Statements made by victims in a police report are hearsay and are not admissible at trial to prove the truth of the matter asserted. *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994). The district court did not abuse its discretion by declining to consider the police report as evidence that the items were stolen.

In contrast to its rejection of the police report and the Lauderdales' interrogatory answers, the district court did consider certain unauthenticated documents attached to First American's motion for summary judgment. The unauthenticated documents were a blank master vendor agreement between Wells Fargo and First American, a document showing D&D as one of First American's contractors, and a First American Visit Report from D&D regarding its first trip to secure the Lauderdale's Vernor house. The first two documents merely helped establish the general relationships among Wells Fargo, First American, and D&D, relationships that the Lauderdales themselves argue existed. The Lauderdale's concerns regarding the unauthenticated

exhibits actually relate to the Visit Report, which includes an unsworn hearsay account from D&D regarding what its representatives did at the Vernor house. In the summary judgment order, the district court cited the Report and stated that it was uncontradicted, even though, had the unsworn interrogatory answers been accepted as evidence, they would have contradicted the report.

The plaintiffs claim that the district court's decision to consider the three documents was inequitable because the court rejected the plaintiffs' unsworn evidence. However, the plaintiffs did not object to the lack of authentication of First American's documents, whereas First American did object to the interrogatory answers.[1] Usually, when a party fails to object to evidentiary materials submitted by the opposing party in support of summary judgment, the objections are deemed forfeited or waived. *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994). This court, however, will consider evidentiary objections made for the first time on appeal to prevent "a gross miscarriage of justice." *Id.*; *see also Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007).

In *Ford v. Securitas Security Services USA, Inc.*, 338 F. App'x 483 (6th Cir. 2009), we considered such an objection in the context of an employment discrimination claim. The plaintiff argued that he was qualified for a firefighter position but the district court—relying on inadmissible hearsay to find that the position required fire officer certification, which the plaintiff lacked—granted summary judgment to the defendant. *Id.* at 487. The plaintiff objected to the hearsay for the first time on appeal. *Id.* at 488. We found that it would be a gross

---

[1]The Lauderdales did object to the fact that the documents were not properly produced or disclosed pursuant to Federal Rules of Civil Procedure Rule 26(a) and that they received them late. This does not address authentication of the evidence.

miscarriage of justice not to grant the objection on appeal because no other admissible evidence demonstrated that the position required fire officer certification. *Id.*

Here, all three documents are relatively unimportant to the case, and the contractual relationships that the documents help demonstrate are not contested. In fact, the Lauderdales' claims rely on those same relationships. The district court further considered the Visit Report when it reviewed Section 7 of the Mortgage Agreement as part of the trespass to chattels claim. However, the district court had already found that Section 7 of the Mortgage Agreement was not applicable. The district court's consideration of First American's exhibits does not rise to the level of a gross miscarriage of justice because the exhibits were only relevant to demonstrate uncontested facts.

Because the district court's evidentiary rulings were proper, the Lauderdales have no admissible evidence demonstrating that the defendants or their agents wrongfully exerted dominion over the Lauderdales' property or received benefit from removal of any of that property. The district court properly dismissed the conversion, trespass to chattels, and unjust enrichment claims.

## D.  The Michigan Consumer Protection Act

The Lauderdales allege a number of violations of the Michigan Consumer Protection Act (MCPA). Wells Fargo argues that the MCPA is inapplicable because it does not apply to transactions or conduct "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." M.C.L. § 445.904(1)(a). Wells Fargo raised the inapplicability of the MCPA as an affirmative defense in its answer.

First American argues that the MCPA does not authorize a claim here because it applies only to "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ." M.C.L. § 445.902(g). The Lauderdales contend that First American waived this affirmative defense by failing to raise it prior to its motion for summary judgment. Federal Rule of Civil Procedure 8(c)(1) requires certain affirmative defenses to be stated in the answer. "The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (quoting *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971)). A district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment if doing so does not result in surprise or prejudice to the plaintiff. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997); *see also U.S. Fire Ins. Co. v. City of Warren*, 176 F.Supp.2d 728, 731 (E.D. Mich. 2001).

Here, the MCPA claims against First American and Wells Fargo were identical and Wells Fargo raised the defense properly, giving the Lauderdales notice that the affirmative defense applied to the allegations at issue. Further, the Lauderdales have pointed to no additional discovery evidence that would have been requested had First American raised the defense in its answer. The district court did not abuse its discretion in allowing First American to raise the affirmative defense in its summary judgment motion.

"The intent of the MCPA is to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 899 (W.D. Mich. 2001). As the district court found, the MCPA does not apply to either defendant because performing the "secure" on the plaintiffs' property is

not a service for a personal, family, or household purpose and thus the MCPA does not apply. *See* MCL § 445.902(g). Further, the MCPA does not apply where the general transaction was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of [Michigan] or the United States." MCL §445.904(1)(a); *see Newton v. West*, 686 N.W.2d 491, 493 (Mich. App. 2004). The Mortgage Agreement stated that Wells Fargo is a national banking association, and national banking associations are authorized to provide mortgages. 12 U.S.C. § 371(a). Thus, the MCPA would not apply to the defendants or their agents performing a "secure" because the right to do so was included in Section 9 of the Mortgage Agreement. *Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534, at *8 (E.D. Mich. Jan. 13, 2012) (compiling cases exempting mortgages by regulated lending institutions from the MPCA); *see also Newton*, 686 N.W.2d at 493 (exempting mortgages by federal savings banks from the MCPA). The district court properly dismissed the MCPA claims.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the defendants.