NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0337n.06

No. 15-2094

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LENNOX EMANUEL, | ) | **FILED** |
| | ) | Jun 20, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| COUNTY OF WAYNE, Sheriff Deputies | ) | STATES DISTRICT COURT FOR THE |
| TURFE, MATHEWS, and TANNER, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:     DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Plaintiff Lennox Emanuel was arrested after Wayne County Sheriff's Office personnel observed him speaking with a known prostitute, inviting the woman into his car, and then driving her to a motel parking lot a few miles away.  After a Michigan state-court judge found Emanuel not guilty of the resulting "receiving and admitting" charges, the plaintiff filed this federal suit against the Wayne County officers involved in his arrest, as well as against Wayne County itself.  The district court granted summary judgment to the defendants on Emanuel's claims of arrest without probable cause, malicious prosecution, failure to supervise, failure to train, and gross negligence.  Emanuel now appeals that decision, arguing that if the district court had considered an affidavit from the woman with whom he was arrested, he would have established a genuine dispute of fact that would have precluded summary judgment.  Because we conclude that the district court did not

abuse its discretion in striking the affidavit and did not err in its grant of summary judgment to the defendants, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In response to citizen complaints of prostitution and drug activity in the vicinity, officers of the Wayne County Sheriff's Office conducted a surveillance operation in the area around Derby and Remington Streets in Detroit in late September 2011. On September 28, Officer Sheri Tanner, while working with an employee of the Detroit Police Department, observed Leiann Gross, a woman to whom Tanner previously had issued more than six citations for prostitution, flagging down vehicles driving in the area. Eventually, Tanner saw Gross approach a black Audi automobile with tinted windows, speak with the driver, and then get into the passenger seat of the vehicle.

At that time, Tanner radioed other members of her team who were in the general vicinity, and she herself began following the Audi from a distance, noting at one point in the journey that the driver of the Audi failed to signal a turn properly. One of Tanner's team members, Officer Assad Turfe, heard Tanner's report, and he too began tailing the Audi in his unmarked car as the Audi traveled northward on Woodward Avenue. Turfe was able to travel between the Audi and Tanner, who was some distance behind Turfe. Eventually the Audi driver turned into the parking lot of the De Lido Motel, pulled into a parking space, and remained seated in the car. After "[t]hree to four minutes," Turfe and Officer Jason Mathews, who by then also had arrived at the scene, approached the Audi "[t]o conduct an investigatory stop," "[b]ased on the information [Turfe] had received over the police radio that a prostitute had entered the vehicle and the fact that [the Audi was] currently parked in a parking lot where there's high prostitution activity."

Mathews approached the driver of the Audi while Turfe went to the other side of the vehicle and ordered the passenger, later confirmed to be Leiann Gross, to exit the car. After reading Gross her *Miranda* rights, Turfe inquired what the vehicle's driver had wanted with her, to which Gross replied that they had driven "to the [De Lido] Motel to have sex but ha[d] not discussed money yet." Upon hearing that admission, Turfe approached Mathews to ascertain what, if any, information Mathews had obtained from his conversations with the driver, plaintiff Lennox Emanuel. Mathews told Turfe that Emanuel had refused to speak with him about details of his association with Gross or the reason he was at the De Lido Motel but had stated that he was a lawyer. Based upon what Gross already had divulged to Turfe, the officer placed Emanuel under arrest.

While Turfe was handcuffing Emanuel, Mathews took his turn speaking with Gross. During that second round of questioning, Gross offered "[t]hat she knew [Emanuel], she knew [him] well and [he] had picked her up on several occasions and [Emanuel] had had sexual intercourse with her" on previous occasions. According to Turfe, his subsequent questioning of Emanuel led to similar admissions. The officer testified during his deposition that, while in the De Lido Motel parking lot, he also read the *Miranda* warnings to Emanuel, who then confessed both that he knew Gross was a prostitute and that he drove her to the motel "to have sex with her."

Later, however, Emanuel vehemently denied that he had given any such information to Turfe during the officer's questioning or that he had confessed to any crime whatsoever. In fact, during his deposition testimony, Emanuel cast a radically different light on his interaction with Gross. According to Emanuel, he did not know that Gross was working as a prostitute and did not pick her up in order to engage in sexual activities. Rather, he asserted that he was in the area

at the time seeking clues to the murder of a friend, Raina Blasius, whom he had represented when Blasius faced loitering and other misdemeanor charges. Because Blasius had been murdered in the vicinity of the Derby Street/Remington Street intersection, Emanuel claimed that he had driven to that area from his office in an effort to locate anyone who could offer information about the murder. When he saw Gross walking in the area, he recognized her as a former companion of Blasius and thus stopped to see whether she knew anything about the murder, despite the fact that Emanuel claimed that he never had spoken to Gross before September 28.

Emanuel also said that when Gross indicated a willingness to speak with him about Blasius, he invited her into his car and drove to the De Lido Motel, not to engage in any sexual activity, but because the motel parking lot was lighted and was one of the safer locations in the area. Emanuel said that, once in the lot, he and Gross remained in the car talking about Blasius "for about 15, 20 minutes before the officers approached." He testified further that after handcuffing him, Turfe screamed at him and ordered him to admit that he had driven Gross to the motel for a sexual liaison. Emanuel claimed that he refused to say anything at all to Turfe and just "star[ed] at the guy dumbfounded."

Nevertheless, as a result of the information Turfe and Mathews claimed to have received from Gross and Emanuel, Mathews wrote up complaints for Emanuel and for Gross—a citation for "receiving and admitting" a person for an act of prostitution for Emanuel, *see* Detroit City Code § 38-9-4(b), and a citation for "accosting and soliciting" an act of prostitution for Gross. *See* Detroit City Code § 38-9-4(a). Officer Tanner signed both complaints as the issuing officer because her initial observation of the interaction between Emanuel and Gross had led to the arrests. Turfe also processed paperwork to impound Emanuel's vehicle pursuant to the

provisions of Michigan's nuisance-abatement statutes, *see* Mich. Comp. Laws §§ 600.3801–3841, before allowing both Emanuel and Gross to leave the area. The following week, Emanuel paid $3,600 for the release of his vehicle from the impound lot, the fourth time he was forced to pay to retrieve an automobile that had been seized by the authorities in connection with a violation of a municipal ordinance.

The state trial on Emanuel's "receiving and admitting" charge was scheduled for March 20, 2013, but that charge was dismissed without prejudice when no representative from the Wayne County Sheriff's Office appeared in court. Citing that disposition, Emanuel filed this federal lawsuit on July 24, 2013, alleging causes of action under 42 U.S.C. § 1983 against Officers Tanner, Turfe, and Mathews for arrest without probable cause and for malicious prosecution; against Turfe for failure to supervise; and against Wayne County for failure to train its officers properly. Emanuel's complaint also included a state-law claim against Tanner, Turfe, and Mathews for gross negligence in the performance of their official duties.

Less than three months later, Tanner reissued the "receiving and admitting" citation to Emanuel, leading the district court to stay the federal-court proceedings "pending resolution of the state-court criminal proceedings against [Emanuel]." Ultimately, a bench trial on the "receiving and admitting" charge was held in state court, at which neither Emanuel nor the prosecution called Leiann Gross as a witness. At the conclusion of those proceedings, the state-court judge made the following statements in open court:

> First of all, to me, there is no question about the credibility of the stop. To me the stop was credible based on reasonable suspicion. So I don't think that was the issue at all, and I don't think that had anything to do with the stop. . . . [E]ven if there was no turn signal violation, there was still enough just based on what had been observed for the officer to make that *Terry* stop.
>
> Now, we already ruled on the *corpus del[i]cti*, so that's a non-issue. The only issue now is whether the People have proven their case beyond the high standard

of reasonable doubt. In this Court's mind they have not, and the response and a [sic] explanation given by the Defendant is plausible. It's plausible and it's plausible for the reasons that I said. Looking at whether an attorney, a law student even[,] would have made a confession like that under those circumstances. It's plausible to me that it didn't happen exactly like that. At least I don't believe that the People have shown beyond a reasonable doubt that it had.

It is also significant to me that the car with both parties, Ms. Gross and Mr. Emanuel, had been observed and they didn't do anything for a period of time. Now, they could have been in [there] discussing that but we don't know what and the People haven't shown beyond a reasonable doubt that that's what was happening.

It is also plausible to me that the Defendant drove to where he felt it was the most secured environment. It's also not dispositive to me of the location of northwest Detroit because, as we all know, there [are] so many areas around here for prostitution and drugs that you can't stop almost anywhere and not have it known for prostitution and drugs.

So really for me, *my decision is based on the standard of beyond a reasonable doubt*. I don't think the People have met that to the satisfaction of this Court; and so the Court is going to dismiss the charge or find Mr. Emanuel not guilty. (Emphasis added.)

Then, in a written order later memorializing its decision, the state court summarized its

findings of fact and legal conclusion as follows:

The testimony of Officer Turfe regarding defendant blurting out an incriminating confession after being given his Miranda warnings lacked credibility.

Defendant's testimony regarding the explanation for picking up Ms. Gross and driving her to a well-lit parking lot in the area to talk about the unsolved murder of one of defendant's former clients was plausible and credible, especially in light of the Court's observance of the People's witnesses while the defendant was testifying.

The veracity of the testimony of the officers is also in question with respect to evidence that showed that this incident was originally scheduled for trial and was ultimately dismissed without prejudice because the officers failed to appear. Only after the defendant filed a federal action against the officers challenging their conduct on the night in question, was this matter re-issued. Evidence further revealed that the federal action has been stayed pending the outcome of the instant case.

Any evidence presented to support the People's charge that the defendant was receiving and admitting another for an act of prostitution was persuasively refuted by the defendant and created reasonable doubt for the trier of fact . . . .

Due to the lack of credibility of Officer Turfe's testimony about the alleged statement of the defendant, the procedural history of this incident and the resultant actions both in state and federal court, and the testimony of the defendant without objection or later impeachment coupled with the courtroom demeanor of the officers during defendant's testimony, the Court finds that the People have failed to meet the requisite burden of proof for a finding of guilt on the crime as charged.

In light of the not-guilty verdict rendered in the state proceedings, Emanuel filed, and the district court granted, a motion to lift the stay on the federal causes of action. The parties then engaged in discovery, leading the defendants to file a motion for summary judgment in their favor on all claims raised by Emanuel. In his March 30, 2015, response to that motion for summary judgment, Emanuel produced—for the first time—an affidavit from Leiann Gross that had been sworn to two months earlier. In that affidavit, Gross claimed that she "never confessed to any illegal activity either by [her]self or Mr. Emanuel on September 28, 2011[,] to any of the officers on the scene." The defendants insisted, however, that the affidavit must be stricken because Emanuel failed to comply with his duty to disclose witness statements requested in prior discovery filings.

Because the affidavit fell within the ambit of an earlier discovery request, and because Emanuel failed to comply with that request by producing the affidavit in a timely fashion, the district court ordered Emanuel to make Gross available for a deposition within 28 days or risk having the affidavit stricken for failure to comply with the order. When Emanuel failed to produce Gross as directed, the district court not only struck the affidavit from the record but also took the opportunity to grant summary judgment to all defendants on all claims raised by Emanuel. According to the district court's order, "[e]ven had the court declined to strike the

Gross Affidavit, Defendants would be entitled to qualified immunity," and the defendants' motion for summary judgment still would have been granted. Emanuel now appeals from the order dismissing all claims raised by him in his complaint.

## DISCUSSION

### The Gross Affidavit

As previously noted, Emanuel offered an affidavit from Leiann Gross in response to the defendants' motion for summary judgment, in an effort to establish that Gross had never confessed to Officers Turfe and Mathews that she was working as a prostitute, that she was accompanying Emanuel to a motel in order to engage in sexual activity, or that she and Emanuel "had failed to set a price for any sex act." Because that affidavit was dated January 28, 2015, two full months prior to Emanuel's disclosure of the statement for the first time on March 30, the defendants moved to have the affidavit stricken from the record before the court.

The district court ruled initially that Rule 37 of the Federal Rules of Civil Procedure did not require exclusion of the affidavit from evidence because Emanuel had listed Gross as a potential witness both in his preliminary witness list and in his final witness list, thus complying with the disclosure requirements of Rule 26(a) and (e) of those same procedural rules. Nevertheless, the district court ultimately struck the affidavit from consideration when Emanuel failed to produce Gross for a deposition, as ordered by the court.

We apply the "highly deferential abuse-of-discretion standard" when reviewing discovery rulings by a district court. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Beil v. Lakewood Eng'g & Mfg. Co.*,

15 F.3d 546, 551 (6th Cir. 1994). Whether a district court's discovery ruling is "unreasonable, arbitrary or fanciful" depends on several factors, including: (1) whether the adversary was prejudiced by the other party's failure to cooperate in discovery; (2) whether the sanctioned party was warned that failure to cooperate could lead to sanctions; and (3) whether less drastic sanctions were considered. *Id.* at 551-52 (citations omitted).

The initial disclosure provisions of Rule 26 of the Federal Rules of Civil Procedure require that a party provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Additionally, a party must make available "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Moreover, such initial disclosures do not relieve a party of future discovery obligations. In fact, in pertinent part, Rule 26(e)(1)(A) states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to . . . [a] request for production . . . *must supplement or correct its disclosure or response* in a timely manner *if the party learns that in some material respect the disclosure or response is incomplete or incorrect*, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. (Emphasis added.)

If a party does not adhere to the dictates of Rule 26(a) and (e), Rule 37 of the Federal Rules of Civil Procedure directs the district court to sanction the offending party. Specifically, according to the explicit provisions of Rule 37(c)(1):

> If a party fails *to provide information or identify a witness* as required by Rule 26(a) *or (e)*, the party is not allowed to use that information or witness to supply evidence *on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. (Emphasis added.)

In this case, however, the district court concluded that it was "not required by Rule 37 to exclude [Gross's] affidavit" because the rule applies only "to initial disclosures under Rule 26(a) and supplemental disclosures under Rule 26(e)." Such a conclusion by the district court fails to accord Rule 37(c) the reach envisioned by the plain language of the rule. Although inclusion of a witness's name on witness lists might constitute compliance with the initial disclosure requirements of Rule 26(a)(1)(A)(i), such minimal effort does not comport in all instances with a party's more extensive duty under Rule 26(e)(1)(A) to supplement and correct disclosures and responses. Indeed, the interplay between Rules 37(c)(1) and 26(e)(1)(A) requires that a party who has listed an incorrect or outdated address for a witness must supplement that disclosure by informing the opposing party of the new or correct address. Similarly, a party who has responded to a request for production of statements from witnesses by indicating that no such statements exist, upon obtaining a statement from a listed witness, must provide that information and that statement to opposing counsel.

Compliance with these requirements of the procedural rules did not occur here. As part of their discovery process, the defendants sent Emanuel a request for production of certain documents. Included was a request for "[l]egible copies of all witness statements or reports whether written or otherwise recorded." On October 29, 2014, Emanuel filed his response to that request, indicating that, at that time, he did not possess any such statements or reports from witnesses. Also, on January 19, 2015, Emanuel provided his final list of potential witnesses, a list that included "Leiann Gross, 22079 Exeter, Detroit, MI 48201." Nine days later, on January 28, Emanuel obtained from Gross the affidavit in which she denied having confessed any wrongdoing to Officers Turfe and Mathews. Conveniently, the court-ordered period for discovery closed five days after that, on February 2.

Not until responding to the defendants' motion for summary judgment on March 30 did Emanuel provide any notice to the defendants that he had obtained an affidavit from Gross or that he was aware of how to contact the individual who played such a pivotal role in the actions that led to Emanuel's arrest. When the defendants objected to the use of the affidavit, the district court, on May 18, ordered Emanuel to produce Gross for a deposition to be conducted by the defendants' counsel or risk having the affidavit stricken from consideration. Ten days later, rather than producing Gross as ordered, Emanuel sent a letter to defendants' counsel indicating that he had gone to the location where he had contacted Gross and "found that the house had been burned to the ground." He further indicated that the address at which he visited Gross was "the location where the Defendants listed her as residing," which was "22079 Exeter, Detroit, MI 48201." The next day, however, Emanuel sent a second letter to defendants' counsel that included the following: "Ms. Gross was discovered residing at 20239 Derby Street, Detroit. That house is now burnt to the ground. As far as we can establish[,] the 22079 Exeter, Detroit[,] address does not exist." Thus, not only did Emanuel obtain an affidavit from Gross and fail to inform the defendants of that fact until two months after the close of the discovery period, but he also knew of Gross's correct address no later than January 28, 2015, the date of the affidavit, but did not share that information, as he was required to do by Rule 26(e), for another four months.

As we have recognized, although "[a] district court has the inherent power to sanction a party when that party exhibits bad faith" in discovery matters, *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003), a court's ability to strike an affidavit or other document pursuant to Rule 37(c)(1) due to a party's failure to supplement Rule 26 information does not require a showing of bad faith by the offending party. *Id.* at 421. Rather, sanctions under Rule 37 are proper unless the party's failure to comply with discovery rules "was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1). In directing Emanuel to produce Gross for a deposition or risk having her affidavit stricken, however, the district court recognized that Emanuel's actions here were both unjustified and harmful:

> Plaintiff's conduct presents a clear case of sandbagging to the Defendants' detriment. Defendants could have deposed Gross, questioned whether the signature on the paper was hers and, if it was, whether she might now disavow the statements attributed to her in the affidavit (which as Plaintiff explained on the record, he prepared). At a minimum, the arguments in their summary judgment brief would have been structured differently to take account of the new information.

Emanuel has not, and cannot, show that his failure to comply with discovery rules "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court, therefore, did not abuse its discretion in disallowing use of Gross's affidavit; because the sanction was proper under Rule 37(c), the district court need not have relied upon its inherent power to punish discovery violations. Nevertheless, Emanuel's challenge to the striking of Gross's affidavit is without merit.

## Probable Cause to Arrest Emanuel

Emanuel also asserts that the district court erred in granting summary judgment to the defendants on his claim that Tanner, Turfe, and Mathews arrested him without probable cause, thus violating his constitutional right to be free from unreasonable seizures. We review a district court's grant of summary judgment *de novo*. *Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient proof for a trier of fact to find for that

party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A non-moving party cannot withstand summary judgment, however, simply by introduction of a "mere scintilla" of evidence in its favor. *Id.*

To succeed on a claim brought pursuant to 42 U.S.C. § 1983, Emanuel "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citation omitted). Both parties in this matter agree that Tanner, Turfe, and Mathews, as officers of the Wayne County Sheriff's Office, were acting under color of state law when they took part in Emanuel's arrest. Emanuel contends that his arrest was not supported by probable cause and thus violated the protections afforded by the Fourth and Fourteenth Amendments to the United States Constitution.

"[I]t is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). An arrest is supported by the requisite probable cause when, at the time of that arrest, "the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Significantly, "the Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (emphasis in original). Rather, "[p]robable cause requires only the probability of criminal

activity, not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th

Cir. 1988 (citing *Illinois v. Gates*, 462 U.S. 213 235 (1983)).

In a § 1983 action, the determination of whether probable cause for an arrest existed at

the time of a seizure by government officers is a question to be presented to a jury, *see Pyles v.*

*Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995), "unless there is only one reasonable determination

possible." *Id.* This case presents just such a situation, rendering unnecessary the presentation of

the issue of probable cause to a jury.

At the time he placed Emanuel under arrest, defendant Turfe knew that one of his fellow

officers had observed Emanuel speaking with a known prostitute in an area known for its

prostitution and drug-trafficking activity. Furthermore, the woman was seen getting into

Emanuel's car and driving with him to the parking lot of a motel frequented by prostitutes and

their "clients." Admittedly, neither Officer Turfe nor Officer Mathews saw Emanuel engage in

any sexual activity with the woman and did not see money being transferred between the two

individuals. Nevertheless, once Turfe and Mathews approached the vehicle and asked the

occupants to exit the car, Leiann Gross, the passenger, admitted to the officers that Emanuel had

picked her up on several previous occasions in order to engage in intercourse with her and that

Emanuel had driven her on this occasion to the De Lido Motel for sexual activities, even though

she and Emanuel had not discussed payment prior to the arrest. With such information in his

possession, Turfe clearly had probable cause to believe that Emanuel had committed, was

committing, or was about to commit an act prohibited by the Detroit ordinance criminalizing

"receiving or admitting" a person into any place in order to commit any act of prostitution.

Detroit City Code § 38-9-4(b).

Emanuel insists, however, that he has presented evidence—Gross's affidavit—that disputes the accounts of Turfe and Mathews and thus creates a genuine dispute as to whether the officers had sufficient knowledge of wrongdoing to justify placing Emanuel under arrest. However, the district court struck Gross's affidavit and did not consider its contents in granting summary judgment. Instead, the district court relied upon the facts that, at the time Turfe arrested Emanuel, Turfe knew that Emanuel had picked up a known prostitute and had driven her to a motel identified as a site of prostitution activity, and that the woman had confirmed that Emanuel had approached her for sexual favors and had arrived at the motel with the intention of renting a room for a sexual liaison. Such information was more than sufficient to establish the necessary probable cause to arrest Emanuel for the offense with which he was charged.

Nor does the fact that a state-court judge ultimately acquitted Emanuel of the charged conduct vitiate the determination that Turfe had probable cause for an arrest. *Criss*, 867 F.2d at 262. The burden of establishing probable cause to support an arrest is not as onerous as the burden of establishing proof beyond a reasonable doubt to support a criminal conviction. Thus, the same evidence that is sufficient to justify an arrest also can be found insufficient in a different, more-exacting context.

Moreover, Emanuel's own later denial of criminal motives and actions does not call into question the legitimacy of the probable-cause finding, because only those facts known or reasonably available to the officers at the time of the arrest are germane to the probable-cause determination. In any event, even had Emanuel offered an innocent explanation of his deeds at the time of his arrest—rather than refusing to answer any questions propounded by the officers— the probable-cause analysis would have been no different. As this court stated in *Criss*:

> A suspect's satisfactory explanation of suspicious behavior is certainly a factor
> which law enforcement officers are entitled to take into consideration in making

the determination whether probable cause to arrest exists. A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.

*Id.* at 263 (citations omitted). *Cf. Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1011–12, 1014 (6th Cir. 1999) (holding that officers who *know* that arrestee has a legitimate ground for acts under investigation *do not* have probable cause to arrest). The district court did not err in granting summary judgment to the defendants on Emanuel's claim of arrest without probable cause.

## Malicious Prosecution

Emanuel also contends that the district court erred in granting summary judgment to the defendants on his claim of malicious prosecution. In order to state a valid claim of malicious prosecution, a plaintiff must establish the following facts:

(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

Without question, Emanuel produced evidence establishing that the criminal charges against him were dismissed after the state court concluded that the prosecution had not satisfied its burden to show Emanuel's guilt beyond a reasonable doubt. Furthermore, he has offered sufficient evidence to create at least a genuine dispute of fact over whether he suffered a deprivation of liberty as a result of the arrest and prosecution of the charge of receiving and admitting. However, generally, "prosecutors alone make the decision to prosecute," *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005), and Emanuel has failed to offer any

evidence that the prosecutorial responsibility was usurped by sheriff's office employees. The district court thus did not err in granting summary judgment to the defendants on this claim as well.

**Alternative Grant of Qualified Immunity to Defendants Tanner, Turfe, and Mathews**

In its order granting summary judgment to the defendants, the district court noted that, even if it had declined to strike Gross's affidavit, Emanuel still could not prevail on his constitutional claims because the arresting officers would have been entitled to qualified immunity from liability for civil damages. Qualified immunity is available to government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The district court in this case did concede that, absent Gross's confession of wrongdoing to Turfe and Mathews, "the undisputed facts . . . fall slightly short of probable cause" because the officers themselves observed only suspicious activity, not criminal activity. Even so, the district court concluded that "it cannot be said that Plaintiff's actions—approaching and picking up a known prostitute and driving her to a motel known for being a frequent site for prostitution—did not lead the officers to *believe* that probable cause existed." Because such a conclusion was reasonable under the circumstances, qualified immunity would have been appropriate. *See id.* at 641 ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present,

and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").

Interestingly, Emanuel's appellate argument on this issue does not focus on, or even mention, whether the officers' decision to arrest the plaintiff would have been reasonable had *Gross* not confessed to prostitution activities. Rather, Emanuel argues only "that probable cause to arrest and prosecute Plaintiff arose from [*Emanuel's* own] confession." Because the Michigan state court deemed Turfe's assertions that Emanuel confessed to him to lack credibility, Emanuel contends that an issue of fact now is present and should be placed before a jury. However, it is not *Emanuel's* confession that bore any relevance to the probable-cause determination, especially because the record is clear that Turfe placed Emanuel under arrest prior to the plaintiff's alleged confession. Emanuel's challenge to the district court's alternative basis for granting summary judgment to the defendants on the probable-cause-to-arrest and malicious-prosecution issues thus is without merit.

**Failure-to-Train/Improper-Seizure-of-Automobiles Claims**

Emanuel also seeks to impose liability upon Wayne County, alleging that the governmental subdivision failed to train its law-enforcement employees properly. However, county liability under § 1983 "is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the county." *Petty v. Cty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

In an effort to bring his claims within those parameters, Emanuel contends that Wayne County has a vested interest in obtaining the exorbitant recovery fees associated with police seizures of vehicles. Thus, he argues, the county turns a blind eye to the sheriff's office practice

of arresting individuals for prostitution-related offenses without probable cause, seizing vehicles from those individuals, and then neglecting to prosecute the cases, thereby avoiding the risk that the public will learn of the improper arrests.

Even if the county were to have harbored such Machiavellian intent, Emanuel simply has failed to adduce any evidence to support his claims. The appellate record is devoid of proof regarding Wayne County's training practices and procedures regarding arrests and vehicle impoundments. Furthermore, although Emanuel does include in the record arrest complaints of other individuals whose prostitution-related charges ultimately were dismissed when the arresting officers did not appear in court, he did not allege or offer proof that those individuals were arrested without probable cause. As noted by the district court, the examples offered by Emanuel establish, at best, "a lack of vigor in prosecution," not a sanctioned custom, practice, or policy of arresting without probable cause individuals seeking sexual interludes with prostitutes. Given the lack of evidence that similar arrests were anything but proper, the defendants were justified in seizing the vehicles of the arrestees pursuant to the provisions of Michigan's nuisance-abatement statutes. Thus, this claim also is without merit.

**State-Law Claim of Gross Negligence**

In a final appellate issue, Emanuel submits that the individual defendants also are liable under state law because, even though acting within the scope of their authority, Tanner, Turfe, and Mathews were grossly negligent, thus negating any attempt on their parts to cloak themselves with governmental immunity. Pursuant to the provisions of Michigan Compiled Laws § 691.1407(2)(a)–(c), an employee of a state governmental agency is immune from tort liability "while in the course of employment or service" if the employee "is acting within the scope of his or her authority," the employee "is engaged in the exercise or discharge of a

governmental function," and the employee's "conduct does not amount to gross negligence that is the proximate cause of" any injury or damage. For purposes of that section of the Michigan Code, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).

Emanuel contends that Tanner, Turfe, and Mathews exhibited just such recklessness when they arrested him, allegedly on the basis of his confession, even though the officers had no recording, no notes, and no other evidence that could corroborate the fact that Emanuel in fact voluntarily chose to incriminate himself by admitting to procuring the services of a prostitute. Emanuel's argument in this regard suffers from two fatal flaws. First, as explained previously, Emanuel's alleged confession did not serve as a basis for his arrest. In fact, all the evidence before the district court indicated that the plaintiff was arrested and handcuffed *before* he offered a statement to Turfe. Second, prior to the time Emanuel allegedly gave his inculpatory statement, Turfe and Mathews already had obtained from Leiann Gross an admission that Emanuel had engaged her to provide sexual favors and had driven her to the De Lido Motel to rent a room for such activities. Officers acting on information that a known prostitute flagged down a vehicle, entered that automobile, and was driven to a motel known to cater to prostitutes and their customers were not acting so recklessly "as to demonstrate a substantial lack of concern for whether an injury results." Thus, Emanuel also has failed to create a genuine dispute of fact such that summary judgment should not have been granted to the defendants on the gross-negligence claim.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.