NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0294n.06

No. 15-4422

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL ABRAMS, | ) | |
| | ) | |
| Plaintiff, | ) | **FILED** |
| | ) | May 25, 2017 |
| and | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| HARRY AYERS, III; CHARLES M. BAKER; | ) | |
| CONNIE J. BAKER; CATHERINE BELL; | ) | |
| CHANTELLE BLACKBURN; DENVER | ) | |
| BLANTON; DENZIL BLANTON; BETH BOSTIC; | ) | |
| KENNETH BRAMMER; JEREMY BURT; RANDY | ) | |
| BUSH; MELISSA BYRD; RANDALL BYRD; | ) | |
| FRANCISCO CABALLERO; STACY CLARK; | ) | |
| VINCENT D. CLARK; ALISSA COLUMBER; | ) | |
| ROBERT CUNNINGHAM; RUSSELL DAVIS; | ) | |
| CYNTHIA DEEMER; MARCUS DEEMER; | ) | |
| SHANE DICKERSON; AMANDA DUNN; JESSE | ) | ON APPEAL FROM THE |
| LEE DUTTON; KRISTIN EDENS; ERNEST L. | ) | UNITED STATES DISTRICT |
| ELKINS; CHARLES ELLIOTT; MICHELE | ) | COURT FOR THE |
| FETTER; BRITTANY FISCHER; JEREMY | ) | NORTHERN DISTRICT OF |
| FOSTER; DEREK FRAZEE; JODI FRAZEE; | ) | OHIO |
| DAVID GARRISON; LINDA GARRISON; JIM | ) | |
| GATTSHALL; WILLIAM GATTSHALL; CAROL | ) | |
| GEKLER; RONALD GEKLER; TERESA | ) | |
| GENDROW; TRACY GRAHAM; MICHAEL | ) | |
| GREENE; JANET S. GULLETT; CHANTELL | ) | |
| HALL; RONALD E. HALL; RONALD HALL, JR.; | ) | |
| JERRY HANAHAN; JEANNA HANSHAW; | ) | |
| KATTIE HARMON; RYAN HARMON; DIANA | ) | |
| HART; RICHARD HART; CAROL HEENAN; | ) | |
| BROOK HESSON; CECIL HOLT; LYNDEE | ) | |
| HOLT; SASHA HUFFMAN; VELMA HUGHES; | ) | |
| BEVERLY ISALY; JEFFREY JACKSON; JUDY | ) | |
| JACKSON; GERALDINE JOHNSON; DORA | ) | |
| JONES; STEVE KILGORE; MATTHEW KINCAID; | ) | |
| PENNY KING; JACK KYSER, JR.; CATHRYN | ) | |
| LINDSAY; MARY C. MACKAN; ELIZABETH | ) | |

MALONE; WENDELL MALONE; CORY MARKS; )
JAMES MAZE; LINDA MAZE; MARGART )
MEADOWS; BONITA MONAHAN; SHYLA )
MONAHAN; GLADYS MONTGOMERY; LARRY )
MONTGOMERY; RALPH B. MORROW; )
PHYLLIS MURPHY; CAROLYN OSKINS; )
BARBARA PARKER; KENNETH PARKER, SR., )
KENNETH FERRAIL PARKER; SHINERR )
PARKER; JENNIE PARR; TODD PARR; )
CHLORIS PRICE; RAY PRICE; KATRINA )
PRIESLER; CHARLOTTE A. QUICK; LUETTA )
QUICK; MICHAEL QUICK; CHRISTOPHER )
REED; KAREN REYNOLDS; TONYA SANDY; )
JANE SCHARF; RICHARD L. SCHWADGRER; )
JOANNE SCOTT; LAURA SEDLOCK; JOSEPH )
SKATZES; BARBARA SMITH; CHARLENE )
SMYTH; GREGG SNARE; MARY SONTAG; )
DONNA SUTHERLAND; JUSTIN TANNER; )
TAHITJA TANNER; RONALD TOLLE; JANE )
WESTON; JACQUELINE WHITAKER; BONNIE )
WHITE; LEWIS WILLIAMS; NANCY WILLIAMS; )
COURTNEY WISE; and MELINDA WOOD, )
 )
     Plaintiffs-Appellants, )
 )
v. )
 )
NUCOR STEEL MARION, INC., )
 )
     Defendant-Appellee. )
 )
 )

BEFORE:    BOGGS, SUHRHEINRICH, and McKEAGUE, Circuit Judges:

SUHRHEINRICH, Circuit Judge.

In this diversity class-action lawsuit alleging state-law claims of indirect trespass and nuisance,[1] Plaintiffs-Appellants, Randal Bush and Ronald Tolle (Plaintiffs), appeal several unfavorable pre-trial evidentiary rulings. After the district court issued these rulings, Plaintiffs

---

[1] Plaintiffs do not raise any issues on appeal specifically related to their claim for nuisance.

and Defendant-Appellee Nucor Steel Marion, Inc. (Defendant), agreed that if they proceeded to trial, it would result in a directed verdict for Defendant. Consequently, Plaintiffs stipulated to a final judgment in favor of Defendant, which led to this appeal. For the reasons set forth below, we affirm the judgment of the district court.

## I. Background

### A. Facts

In 2009 and 2010 the Ohio EPA (OEPA) sent Defendant a number of "notices of violation" alleging emission-regulations infractions by Defendant at its mini-mill in Marion, Ohio (the Facility). Defendant resolved these allegations by entering into a negotiated settlement with the OEPA: the "Director's Final Findings and Orders" (DFFO). In the DFFO, Defendant agreed to comply with the OEPA's orders and waived any rights to appeal in return for full settlement of the disputed claims and without any "admission of fact, violation or liability." R. 74-2 at 1624.

In the DFFO, the OEPA noted that manganese levels in the Marion area were "at elevated levels that are unacceptable for protecting public health." *Id.* at 1617. However, the DFFO did not address the source of the elevated levels of manganese or find Defendant in violation of any regulatory obligation.

In the fall of 2012, Plaintiffs' attorneys held a town hall meeting in Marion, Ohio. Based on the DFFO, counsel alleged that the Facility was emitting manganese over the Marion residents' properties. As a result, a number of property owners, including Plaintiffs, agreed to be members of a class-action lawsuit against Defendant.

**B. Procedural History**

On December 26, 2012, Plaintiffs' attorneys filed the class-action complaint in the Marion County Court of Common Pleas, alleging nuisance and indirect-trespass claims under Ohio law. The claims were based solely on harm to their property from manganese. On January 18, 2012, Defendant timely removed this case to the United States District Court for the Northern District of Ohio, Western Division. Prior to discovery, the class action was transformed into a bellwether trial,[2] and Plaintiffs were designated as the bellwether plaintiffs to test the claims of the class.

Following the close of discovery, Defendant moved to exclude Plaintiffs' expert toxicology witness, Dr. Jonathan Rutchik.[3] Dr. Rutchik was Plaintiffs' key witness, as he was to provide the evidence necessary to establish the alleged damages to Plaintiffs' property. Perhaps sensing that the district court was likely to exclude Dr. Rutchik, and that without his testimony they would not be able to make out a prima facie case, Plaintiffs attempted to bolster the record before the district court.

First, they indicated to the district court that they would now also be relying on the DFFO to establish damages to their properties from manganese. Second, Plaintiffs "adjusted" their theory of liability by alleging property damage from Defendant's particulate-matter emissions, or PM,[4] as a whole (of which the manganese here is only one component). To this end, one month

---

[2] A bellwether trial is where a small number of class-action plaintiffs, who can adequately represent the class, test their claims and legal theories first, before proceeding with the rest of the class.

[3] Defendant also moved to exclude the testimonies of two of Plaintiffs' other expert witnesses: Craig Cantrall, a Cleveland-based real-estate agent, and Lance Traves, an environmental-compliance expert. The district court totally excluded Cantrall's testimony, and only partially excluded Traves' testimony. Those rulings are not at issue on appeal.

[4] Particulate matter, or PM, is "a mixture of solid particles and liquid droplets found in the air." Particulate Matter (PM) Basics, US Environmental Protection Agency (Sept. 12, 2016), https://www.epa.gov/pm-pollution/particulate-matter-pm-basics#PM. These particles "can be made up of hundreds of different chemicals." *Id.* Particles come in

before trial, and after discovery had closed, Plaintiffs (1) disclosed four OEPA fact witnesses, who presumably[5] would have testified to Nucor's standing with the OEPA and testified about the DFFO; (2) began to claim and speak of harm to their properties from PM, rather than from only manganese, in documents submitted to the court;[6] (3) sought judicial notice of eight U.S. EPA documents addressing PM and two more documents concerning manganese in particular (presumably to take the place of expert testimony on the subject); and (4) asked the district court to judicially estop Defendant from advancing arguments that allegedly contradicted litigation positions concerning PM that Defendant had taken in unrelated lawsuits. As a result, Defendant moved to exclude the DFFO and the OEPA witnesses, restrict Plaintiffs' claims to harm from manganese alone, and deny Plaintiffs' motions for judicial notice and judicial estoppel.

The district court issued two orders. In the first order, after "clarif[ying] Plaintiffs' burden of proof on each claim," R. 86 at 2883, the district court granted Defendant's motion to exclude the expert testimony of Dr. Rutchik. It found Dr. Rutchik's opinion inadmissible because Dr. Rutchik failed to "test [his] hypothesis in a timely and reliable manner or to validate [his] hypotheses by reference to generally accepted scientific principles as applied to the facts of the case." *Id.* at 2885 (alteration in original) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000)). The district court further prohibited Plaintiffs from altering their theory of liability from harm based on the emission of manganese to harm from PM. *Id.* at 2880. In this same order, the district court also denied without prejudice Plaintiffs' request for judicial notice and judicial estoppel because Plaintiffs had failed to articulate how any of the documents in question related to their claims. Nonetheless, the court indicated that it would allow Plaintiffs to impeach

---

many forms, such as dust, dirt, soot, or smoke. *Id.* Smokestacks are a common source of PM. *Id.* PM can be the delivery agent for hazardous air pollutants. *See Sierra Club v. EPA*, 479 F.3d 875, 879 (D.C. Cir. 2007).

[5] The content of these witnesses' testimony has never been revealed.

[6] These documents include Plaintiffs' response to Defendant's Motion to Exclude Expert Testimony, Plaintiffs' response to Defendant's Motion to Exclude the DFFO and OEPA Witnesses, and Plaintiffs' brief on appeal.

Defendant's corporate witnesses with relevant prior inconsistent statements, and that it would admit the EPA publications if Plaintiffs showed how the specific information they sought to introduce related to their claims. *Id.* at 2888.

In the second order, the district court first excluded the DFFO because it is a consent decree and is therefore inadmissible under Federal Rules of Evidence 403 and 408 and Ohio Revised Code § 3704.09. R. 102 at 3176. Plaintiffs do not challenge this ruling on appeal. Next, the district court excluded the four OEPA fact witnesses because Plaintiffs did not disclose them until after the close of discovery, and on the eve of trial. *Id.* at 3177.

On appeal, Plaintiffs challenge the district court's: (1) characterization of the proofs needed to establish damages in an Ohio indirect-trespass claim; (2) exclusion of Dr. Rutchik as an expert witness; (3) exclusion of the four OEPA fact witnesses; (4) restriction of their theory of liability; and (5) denial, without prejudice, of their motion for judicial notice and request for judicial estoppel.

## II. Analysis

Unless Plaintiffs can prevail on the first two issues here, it is extremely doubtful that they will be able to show damages and make out a prima facie case under a theory of harm from manganese. Plaintiffs' last three challenges on appeal, much like their corresponding course of action on these issues in the district court, represent a "Hail Mary" attempt to get their case to trial in the absence of Dr. Rutchik.

### A. Proofs Needed to Establish Damages in an Ohio Indirect Trespass Claim

Plaintiffs contend that the district court erred by "requiring general and specific causation proof that a contaminant deposited on a particular property caused a specific personal injury to a specific owner to establish the fact that a contaminant is 'harmful to humans'" in order to

establish their indirect trespass claim for property damages. Appellants' Br. 16-17. Citing *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509 (6th Cir. 2013) and *Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*, 91 F. Supp. 3d 940 (S.D. Ohio 2015), the district court ruled that to establish damages, "Plaintiffs will need to connect the dots to succeed on their trespass claim by showing the manganese levels on each Plaintiff's property were likely to cause harm to human health and caused substantial damage to the properties." R. 86 at 2882. A district court's determination of state law in a diversity case is reviewed de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). We find that Plaintiffs misread the district court's decision and affirm the district court.

Under Ohio law, trespass is an unlawful entry upon the property of another. *Chance v. BP Chems., Inc.*, 670 N.E.2d 985, 991 (Ohio 1996). Unlike suits for direct trespass where damages are presumed, to establish indirect trespass a plaintiff must show that a substance invaded the land due to defendant's intentional act and caused "some type of physical damages or interference with the use [of the property]." *Id.* at 993; *Brown v. Scioto Cty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1161-62 (Ohio Ct. App. 1993). Furthermore, the damage or interference must be "substantial." *Baker*, 533 F. App'x at 522-23 (citing *Lueke v. Union Oil Co. of Cal.*, No. OT-00-008, 2000 WL 1545077, at *7 (Ohio Ct. App. Oct. 20, 2000)); *Brown*, 622 N.E.2d at 1161 (Ohio 1993) (quoting *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 530 (Ala. 1979)). What constitutes "substantial" interference or damage to a plaintiff's property is determined on a case-by-case basis. *See Chance*, 670 N.E.2d at 993. But, a plaintiff "ha[s] to show something more than the 'mere detection' of [the invading substance] on [his] propert[y] to establish the physical damage prong of an indirect trespass claim." *Baker*, 533 F. App'x at 522-23.

There appears to be no Ohio case that explicitly deals with whether substantial physical harm or interference in an indirect trespass case can be established by demonstrating an invading contaminant's harmfulness to human health. However, three federal cases interpreting Ohio law, *Baker*, *Little Hocking*, and *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623 (N.D. Ohio 2014), have applied Ohio's abovementioned principles in this context, and therefore provide us with the most guidance.

In *Baker*, this court held that the plaintiffs failed to establish the invading contaminant was harmful to human health and were therefore unable to establish a substantial injury to or interference with their property, because there was no evidence that any plaintiff would live under conditions such that the invading contaminant would cause an increased *risk* of cancer. *Baker*, 533 F. App'x at 524. Additionally, as the district court in this case noted noted, *Baker* makes clear that each plaintiff must make an individualized showing of harm in a bellwether trial. *Id.* at 523. In *Little Hocking*, the court rejected the defendant's contention that without definitive proof of harm to human health, the plaintiff could not show substantial physical damage to property, thereby implying that something less than definitive proof, i.e., a showing of likelihood of harm to human health, would be sufficient. *See Little Hocking*, 91 F. Supp. 3d at 982. In *Whirlpool Corp.*, the court dismissed the plaintiffs' indirect-trespass claim for the invasion of benzaldehyde emissions where the complaint merely alleged detection of the presence of benzaldehyde in the plaintiffs' attics, and the plaintiffs' expert report made no mention of, much less established, the "*risks* to human health from those amounts of benzaldehyde." *Whirlpool Corp.*, 996 F. Supp. 2d at 641 (emphasis added).

In essence, all three cases interpret Ohio law as saying that in an Ohio indirect-trespass claim, a plaintiff may establish substantial physical damage to, or interference with, his property

by demonstrating that the concentration of an invading contaminant on his property is likely to cause harm to human health. This is exactly what the district court held, and, incidentally, is consistent with the standard Plaintiffs asserted below. *See* R. 86 at 2881. Similarly, we also find this to be the proper interpretation of the principles of Ohio indirect-trespass law that Ohio courts have articulated, and we therefore affirm the district court.

Thus, the real question was, and still remains, whether Plaintiffs have any admissible evidence that can show that the level of manganese on their properties is likely to harm human health and therefore establish substantial physical damage or interference with their property.

## B. Exclusion of Dr. Rutchik as an Expert Witness

Plaintiffs put forward Dr. Rutchik's expert testimony as the only evidence to "connect the dots" between the manganese levels on each Plaintiff's property and the alleged likely harm to human health caused by that manganese.[7] The district court excluded Dr. Rutchik's testimony under Federal Rule of Evidence 702. R. 86 at 2884. Plaintiffs challenge that ruling. We review a district court's exclusion of expert testimony for abuse of discretion. *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 748 (6th Cir. 2016). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (citation and internal quotation marks omitted).

First, the district court found that:

> Dr. Rutchik is a Board Certified physician in neurology and occupational medicine, and specializes in the "evaluation of individuals and populations with suspected neurological illness secondary to exposure of various agents" (Doc. 68-1 at 1). After reviewing soil testing and air modeling data from Plaintiffs' environmental expert Lance Traves, medical studies regarding exposure to manganese, regulatory guidelines, and based on his own knowledge and

---

[7] Plaintiffs represented that they did not intend to use Mr. Traves, Plaintiffs' environmental-compliance consultant, to opine on the alleged health effects of manganese and the physical damages caused by manganese. R. 70 at 1486. Further, Plaintiffs represented in a hearing before the district court that their only other evidence of liability due to harm from manganese is the excluded DFFO, R. 102 at 3176, and Plaintiffs do not challenge its exclusion.

experience in medicine and toxicology, Dr. Rutchik concludes, to a reasonable degree of medical certainty, "that persons who reside full time in the 'class area' [0.25 to 0.5 miles from Nucor's steel plant] for a period of ten (10) years or more will suffer harm to their health caused by such chronic exposure to such elevated levels of manganese" (*id.* at 3).

R. 86 at 2884.

The district court then articulated the standards used to evaluate expert testimony:

Expert opinion testimony involves application of "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Federal Evidence Rule 702(a). Expert testimony is admissible only if the trial court finds the testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). Under Rule 702, this Court's inquiry is a "flexible one," focusing on "the principles and methodology [an expert uses], not on the conclusions that they generate." *Id.* at 595. This Court gauges reliability according to such factors as "(1) whether the theory or technique has been tested and subjected to peer review and publication, (2) whether the potential rate of error is known, and (3) its general acceptance." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Plaintiffs bear the burden of showing by a preponderance of the evidence that the experts' testimony is admissible. *Daubert*, 509 U.S. at 579 & n.10.

*Id.* at 2883-84.

Applying these well-established principles, the district court held, and, based on our review of the record, we agree that:

Dr. Rutchik's opinion is not admissible under Federal Evidence Rule 702. His comparison of the results of Traves' air and soil analyses with the EPA's reference concentration for manganese and eight scientific articles is not "the product of reliable principles and methodology." Federal Evidence Rule 702; *cf. Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 180 (6th Cir. 2009) (finding medical expert's opinion and deferential diagnosis methodology were sufficiently reliable to warrant admissibility). Dr. Rutchik's opinion is conclusory and his assertion that all Plaintiffs have been adversely affected by Nucor's manganese emissions is too broad, general, and vague to be helpful to the trier of fact. *See Baker*, 533 F. App'x at 523–24 (excluding expert testimony for similar reasons). Dr. Rutchik's opinion that Plaintiffs "*will* suffer harm to their health" is not based on any examination or testing and does not address the type or degree of harm Plaintiffs will suffer (*see* Doc. 68-9 at 6). Nor is Dr. Rutchik's opinion supported by the record. *See In re Scrap Metal*, 527 F.3d 517, 530 (6th Cir. 2008) (holding that to be admissible under Rule 702, the expert's opinion must find factual

support in the record).  For instance, Plaintiffs, each of whom lived in Marion for over ten years, do not present any symptoms of illness relating to any alleged manganese exposure (*see* Bush Dep. (Doc. 68-7) at 13–15; Tolle Dep. (Doc. 68-8) at 14).

Rutchik's failure to "test [his] hypothesis in a timely and reliable manner or to validate [his] hypotheses by reference to generally accepted scientific principles as applied to the facts of the case renders [his] testimony . . . inadmissible." *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000) (finding expert's theory unsupported by reliable testing); *see Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005) (affirming exclusion of expert's testimony and finding that expert's "failure to empirically test his theories . . . undermined the reliability of his testimony").

*Id.* at 2884-85.

Based on the foregoing analysis, we hold that the district court did not abuse its discretion in excluding Dr. Rutchik.  As the district court explained, Dr. Rutchik failed to support his hypothesis with any actual proof and thereby made his testimony unreliable.  *See Pride*, 218 F.3d at 578 (affirming the exclusion of expert witnesses for failing to test their hypotheses).

We now turn to Plaintiffs' remaining arguments.

### C. Exclusion of OEPA Fact Witnesses

Plaintiffs challenge the district court's sanction imposed under Federal Rule of Civil Procedure 37(c)(1), excluding as witnesses four OEPA employees Plaintiffs first disclosed in Plaintiffs' proposed trial order on the eve of trial, after the close of discovery.  Rule 37 sanctions are reviewed for abuse of discretion.  *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).

Rule 26(a)(1) requires parties to disclose early in discovery persons likely to have discoverable information if the disclosing party may use that information or person to support its claim or defense.  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 37 requires trial courts to punish parties that violate this provision in Rule 26 with exclusion of evidence or witnesses, unless the sanctioned party can show that the violation is substantially justified or harmless, or the trial

court opts to impose an alternative sanction instead. Fed. R. Civ. P. 37(c)(1); *R. C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010). In determining harmlessness, the Sixth Circuit looks to five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

The district court determined that Plaintiffs' last-minute disclosure of the OEPA witnesses was not harmless or substantially justified. We agree, as none of the abovementioned factors weigh in Plaintiffs' favor.

First, Defendant could only have known about three of the witnesses because they had authored one of the notices of violation sent to Defendant in 2009 or 2010, or they had been carbon copied on one of those notices. Nothing in the record indicates that Defendant knew or could have known about the existence of the fourth witness. Further, there is no evidence that Defendant knew, or could have known, what these witnesses would say at trial. The surprise to Defendant is obvious.

Additionally, at this stage of litigation, allowing the witnesses to testify would delay and disrupt the trial. Not only would Defendant need time to depose the four witnesses, but Defendant would also have to be given the opportunity and time to find rebuttal evidence or testimony. Moreover, given that the content of the proposed testimony of these witnesses has never been disclosed or even hinted at by Plaintiffs, it is impossible to weigh the importance of this evidence. Finally, Plaintiffs did not offer any justification for their tardiness, but simply alleged that Defendant could "easily guess what the substance of [the witnesses'] testimony would be."

In short, we find no abuse of discretion.

## D. Restriction of Plaintiffs' Theory of Liability

Plaintiffs object to the district court's repudiation of their attempt to expand the case's theory of liability upon the eve of trial. As the district court noted, in their opposition to Defendant's motion to exclude Dr. Rutchik's testimony, Plaintiffs recast the harm alleged as coming from "particulate matter" or "PM," as opposed to manganese, without moving to amend their pleadings. Plaintiffs argue that harm from PM can be inferred by looking at the totality of the complaint, or in the alternative, that they are entitled to relief based on a theory of harm from PM under Federal Rule of Civil Procedure 54(c), despite failing to amend their complaint. We review questions of law de novo. *Tri Cty. Wholesale Distribs., Inc. v. Labatt Operating Co., LLC*, 828 F.3d 421, 430 (6th Cir. 2016).

## 1. Inference from Facts as Pleaded

A plaintiff's complaint need not contain a formal legal theory of the harm alleged, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346-47 (2014), however, this does not give a plaintiff *carte blanche*. Complaints must provide defendants with sufficient notice of the type of harm alleged. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014).

Plaintiffs' First Amended Complaint averred liability arising out of damage caused to Plaintiffs' properties as the result of contamination from "hazardous" and "ultra-hazardous levels of manganese." R. 6 at 124-36. Further, during discovery, Plaintiffs sought evidence and produced expert testimony based on a theory of harm solely from manganese. Plaintiffs filed a Second Amended Complaint, in which they made two oblique references to "particulates," R. 34 at 617, 632; however, the Second Amended Complaint was later retracted, and Plaintiffs stipulated that the First Amended Complaint controls, R. 40 at 691.

Plaintiffs now argue that because the manganese emitted by Defendant comes in the form of PM, the harm alleged in the First Amended Complaint should be understood as encompassing PM emissions from the Facility as a whole. Here, harm from manganese is a much narrower claim of liability than harm from PM. The PM emitted by Defendant, according to an air-dispersion modeling analysis conducted by Defendant and submitted to the OEPA, contained at least nineteen air toxics, of which manganese was only one. Further, of the PM emitted, manganese constituted only 4.93% of its concentration, as measured by weight.

Thus, because the harm as pleaded, and used throughout litigation, is much narrower than the harm Plaintiffs wish this Court to infer, Plaintiffs' pleadings could not have given Defendant sufficient notice of this type of harm. Consequently, the district court was correct to forbid Plaintiffs from arguing harm based on PM, absent a successful motion for leave to amend the pleadings.[8]

### 2. Entitlement to Relief under Rule 54(c)

Plaintiffs argue in the alternative that they are entitled to relief based on a theory of harm from PM under Federal Rule of Civil Procedure 54(c). Rule 54(c) requires final judgments (except in the case of default judgments) to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

Plaintiffs misunderstand the meaning of "relief" in Rule 54(c). Rule 54(c) is to be read in conjunction with Rule 8(a)(3), 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2262 (3d ed. 1998), which requires pleadings to state the type of relief demanded,

---

[8] Plaintiffs in their brief on appeal allege that they were "denied even the opportunity to amend their Complaint . . . to add specific allegations regarding PM." Appellant Br. 14. Aside from Plaintiffs' Second Amended Complaint, which was retracted, there is no evidence in the record that Plaintiffs ever sought leave to amend their First Amended Complaint. Plaintiffs try to substantiate their claim by pointing to the district court's decision to limit Plaintiffs' arguments for liability to manganese. This, however, is not evidence of a denial of a motion seeking leave to amend, but rather merely evidence that, in the absence of leave to amend, the district court required Plaintiffs to remain consistent with their complaint and their unwavering litigation position.

Fed. R. Civ. P. 8(a)(3). Rule 54(c), then, "makes clear that a judgment should give the relief to which a party is entitled, *regardless of whether it is legal or equitable or both*." Fed. R. Civ. P. 54(c) advisory committee's note to 1937 adoption (emphasis added). Thus, Rule 54(c) allows courts to give a deserving party a type of relief which their pleadings did not demand. However, this does not mean Rule 54(c) places no limitations on relief. Wright & Miller, *supra*, § 2262. "The relief must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had an opportunity to challenge." *Id.*

In arguing that they are entitled to relief based on a theory of harm from PM, Plaintiffs are not asking for a *type of relief* they failed to plead; rather they are asking for the same type of relief but based on a *factual allegation* they did not plead, and which Defendant has not had an opportunity to challenge. Therefore, Rule 54(c) does not apply here, and the district court was correct to restrict the harm alleged to the harm from manganese.

**E. Denial of Plaintiffs' Motion for Judicial Notice and Request for Judicial Estoppel**

Lastly, Plaintiffs challenge the district court's denial without prejudice of their motion for judicial notice and judicial estoppel. Plaintiffs asked the district court to take judicial notice of 451 pages of U.S. EPA documents concerning PM and manganese, and of court documents from other litigation concerning Defendant's alleged emission of PM. Based upon these latter set of documents, Plaintiffs also asked the district court to judicially estop Defendant from making allegedly contradictory assertions in this litigation. The district court refused to take judicial notice of either set of documents because Plaintiffs failed to show how these documents were relevant to their claims concerning damage to property caused by Defendant's emission of manganese, as it had already ruled that Plaintiffs could not claim harm based on PM. However, the district court made this denial without prejudice, subject to a later showing of relevance, and

invited Plaintiffs to "confer [with Defendant] regarding joint stipulations to be read to the jury, including any EPA findings or matters of public record *relevant* to this case." R. 86 at 2888 (emphasis added). As the parties entered into a stipulated judgment prior to trial, the parties never produced jury stipulations.

To preserve an alleged error on a conditional ruling by the trial court, counsel must affirmatively raise the objection. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Because Plaintiffs failed to preserve their objection to this error in the stipulated judgment, they cannot raise it now. *See Jolivette v. Husted*, 694 F.3d 760, 770 (6th Cir. 2012) ("As a rule, we will not review issues if they are raised for the first time on appeal."). And although an appellate court may take notice of a plain error by the lower court affecting a substantial right, despite the issue not properly being preserved, Fed. R. Evid. 103(e), the "burden of establishing entitlement to relief for plain error is on the [party] claiming it," *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (holding this in a criminal context).

Plaintiffs have "ma[d]e no argument" about plain error, and therefore have "not satisfied [their] burden to establish [their] entitlement to relief." *United States v. Threadgill*, 572 F. App'x 372, 389 (6th Cir. 2014). Therefore, we decline to consider the issue, and we affirm the district court's denial of Plaintiffs' motion for judicial notice and request for judicial estoppel.

### III. Conclusion

For the foregoing reasons, Plaintiffs are unable to make out a prima facie case. Therefore, the judgment of the district court is AFFIRMED.