NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0618n.06

No. 18-3324

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PNC EQUIPMENT FINANCE, successor by merger on behalf of PNCEF, LLC formerly known as National City Commercial Capital Company, LLC, formerly known as National City Commercial Capital Corporation, | ) ) ) ) ) ) ) | |
|     Plaintiff-Appellee, | ) ) | **FILED** Dec 13, 2018 DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTIRCT OF OHIO |
| MARK MARIANI, | ) ) | |
|     Defendant, | ) ) | |
| HARRY CARR, | ) ) | |
|     Defendant-Appellant. | ) | |

BEFORE:  CLAY, McKEAGUE, and BUSH, Circuit Judges.

CLAY, Circuit Judge. Harry Carr ("Carr") appeals the decision of the district court to grant the Motion for Summary Judgment ("Motion") filed by Plaintiff PNC Equipment Finance, LLC ("PNCEF") and to deny Carr's Motion to Amend, Stay, or Vacate the district judge's order ("Post-Judgment Motion").

**STATEMENT OF FACTS**

**A.     Factual History**

Carr is an attorney and a sophisticated businessman.[1] In 2013, Carr and Mark Mariani, another sophisticated businessman,[2] formed HM, LLC ("HM") for the purpose of purchasing aircraft.

HM purchased five airplanes and a helicopter. Each purchase was financed. In December 2005, PNCEF, as lender, and HM, as borrower, entered into a "Master Aircraft Mortgage and Security Agreement" ("Mortgage Agreement"). HM delivered a promissory note for $35,000,000. Carr and his business partner guaranteed the note and promised to perform all of HM's obligations to PNCEF under the Mortgage Agreement and related documents. The parties subsequently modified the Mortgage Agreement on several occasions over the next five years. These modifications extended the maturity date to January 15, 2010.

When the loans matured, the outstanding balance of $40,900,000 became immediately due. HM failed to remit the amount owed. On February 9, 2010, PNCEF sent HM and the guarantors a notice of default and demanded immediate payment. Neither HM nor the guarantors repaid the balance owed. On August 20, 2010, PNCEF demanded immediate surrender of the aircraft. In September 2010, HM sold one of its aircraft and remitted $8,000,000 from the sale proceeds to PNCEF. But HM did not surrender its remaining aircraft as demanded by PNCEF.

PNCEF, HM, and the guarantors subsequently entered into an "Aircraft Transfer and Settlement Opportunity Agreement" under which PNCEF would fully discharge HM of its

---

[1] Carr graduated from the University of Connecticut law school in 1983. Carr has worked as an attorney in Washington, D.C., held two vice president positions at AT&T, and served as an upper-level executive in four smaller companies.

[2] Mariani owns a garden center and a construction business. He has created more than 10 single purpose entities related to these projects.

obligations if HM surrendered one of its remaining aircraft and repaid $2,500,000 by December 31, 2010. HM surrendered the aircraft.[3] But HM did not remit the funds. PNCEF gave HM and the guarantors three more opportunities to satisfy their obligations at a fraction of the total amount owed. The parties executed three forbearance agreements (dated April 6, 2011, September 30, 2011, and April 5, 2013). Each forbearance agreement gave HM the opportunity to discharge all obligations to PNCEF by paying a certain amount ($2,500,000.00, $1,500,000.00, and $1,650,000.00, respectively) by a certain date. Each time, HM failed to remit the requisite funds by the deadline.

After HM and the guarantors failed to take advantage of the fourth opportunity to discharge their debt at a discounted rate, PNCEF decided it would no longer accommodate them. On January 3, 2014, PNCEF demanded immediate payment of the full balance of the outstanding debt. Neither HM nor the guarantors repaid the balance owed.

### B.     Procedural History

PNCEF sued Carr and Mariani for breach of contract. PNCEF moved for summary judgment. PNCEF attached several exhibits in support of its Motion, two of which are at issue in this appeal: (1) the transcript from Carr's deposition, which neither Carr nor the court reporter signed, and (2) a sworn affidavit from David Chambers, a vice president for PNCEF, who opined that HM and the guarantors owed $26,421,527.93 under the Mortgage Agreement. After reviewing the parties' submissions, the magistrate judge issued a Report and Recommendation ("R&R") recommending that the district court grant PNCEF's Motion. The district court adopted the R&R and granted summary judgment in favor of PNCEF.

---

[3] PNCEF sold the aircraft and applied the proceeds to the outstanding amount due under the Mortgage Agreement.

Carr filed a Post-Judgment Motion and argued that the district judge should have disqualified herself under 28 U.S.C. § 455(a) and 28 U.S.C. § 144 because of a conflict of interest. Carr alleged that PNCEF previously provided the judge's spouse with an aviation loan but let him "'off the hook' of [the] aviation loan personal guaranty and forbearance agreement" because his wife was a federal judge. (R. 63-1 at PageID #1318.) Carr stated that he learned about this information from a "former employee and officer" of PNC. (*Id.* at PageID #1316–17.) Carr also filed a "Certification" to support his allegation. But the "Certification" contains minimal factual support for Carr's allegations. For instance, it does not name the person that allegedly told Carr about PNCEF letting the district judge's husband "off the hook" on his aviation loans, state when the judge's husband allegedly had aviation loans with PNCEF, or assert that the judge or her husband even knew that PNCEF let the husband "off the hook" because his wife was a federal judge. (*See* R. 65-1.)

The magistrate judge issued an R&R recommending that the district court deny Carr's Post-Judgment Motion. The district court adopted the R&R. This appeal followed.[4]

## DISCUSSION

### I. Evidentiary Issues

Carr argues that the district court erred by considering his unsigned deposition transcript and Chambers' affidavit at summary judgment. This Court disagrees.

#### A. Legal Standard

"This Court reviews a district court's grant of summary judgment de novo." *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018) (citing *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017)). But this Court reviews a district court's evidentiary rulings in the context of a motion for

---

[4] Mariani did not appeal the district court's judgment.

summary judgment for abuse of discretion. *Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 569 (6th Cir. 2014) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)); *United States v. Foresome Entm't Co.*, 78 F. App'x 458, 461 (6th Cir. 2003). Accordingly, this Court must review the district court's consideration of the unsigned deposition transcript and Chambers' affidavit under the abuse of discretion standard.[5] *See United States v. Heinsohn*, 132 F.3d 34, 1997 WL 745296, at *2 (6th Cir. 1997) (unpublished table opinion) (reviewing "the district court's decision to admit the deposition transcript for an abuse of discretion" (citing *United States v. Mareno*, 933 F.2d 362, 375 (6th Cir. 1991))).

"An abuse of discretion occurs when a district court commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

### B. The District Court Did Not Abuse Its Discretion by Considering Carr's Unsigned Deposition Transcript

#### 1. Relevant Legal Principles

Fed. R. Civ. P. 30 allows a deponent or party to review the deposition transcript upon request. Rule 30(e) provides:

> **(1)** *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

---

[5] Carr erroneously asserts that this Court should evaluate the district court's consideration of the deposition transcript and affidavit under a *de novo* standard of review. Carr fails to appreciate that while this Court reviews a district court's decision to grant summary judgment *de novo*, this Court reviews corresponding evidentiary decisions under a deferential abuse of discretion standard. *See, e.g.*, *Lauderdale*, 552 F. App'x at 569.

> **(A)** to review the transcript or recording; and
>
> **(B)** if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e). Rule 30 does not explain how an officer must make the transcript "available" for review.[6] But federal courts have held that Rule 30 does not require that a court reporter mail a copy of a transcript to a deponent. *Parkland Venture, LLC v. City of Muskego*, 270 F.R.D. 439, 441 (E.D. Wis. 2010); *Williams v. Kettler Mgmt. Inc.*, No. CBD-12-1226, 2014 WL 509474, at \*3 (D. Md. Feb. 5, 2014). And one federal court has held that a court reporter complies with Rule 30 by inviting a deponent to review the transcript at her office. *Parkland Venture*, 270 F.R.D. at 441.

The Sixth Circuit has repeatedly held that a district court does not abuse its discretion by admitting an unsigned deposition transcript unless the party opposing the transcript shows that the transcript contained inaccuracies or that she was otherwise prejudiced by its introduction. *See Willis v. Morris*, 124 F.3d 202, 1997 WL 561332 at \*2 (6th Cir. 1997) (unpublished table opinion) (holding that the district court did not abuse its discretion by relying on an unsigned deposition transcript at the summary judgment stage because the plaintiff-deponent "has not pointed to any perceived inaccuracies in his deposition testimony, nor has he shown any prejudice by the use of his deposition in this case.") (citing *Vukadinovich v. Zentz*, 995 F.2d 750, 754 (7th Cir. 1993)); *Heinsohn*, 132 F.3d 34 (holding that the district court did not abuse its discretion by admitting an unsigned deposition transcript when the deponent did not contest the transcript's accuracy).

### 2. Application to the Matter at Hand

The district court did not abuse its discretion by relying on Carr's unsigned deposition transcript. Carr does not allege that the deposition transcript contains any inaccuracies. And Carr

---

[6] There is a dearth of case law on this issue. The parties' briefs were unhelpful, as neither party cited any authority for what Rule 30 requires.

does not explain how consideration of the transcript prejudiced him. Rather, Carr argues that the mere fact that he did not sign his deposition transcript precluded the district court from considering the transcript at the summary judgment stage. But the Sixth Circuit has repeatedly held that a district court does not abuse its discretion by relying on an unsigned transcript unless the party who opposes the transcript demonstrates that the transcript contains inaccuracies. *Willis*, 124 F.3d 202; *Heinsohn*, 132 F.3d 34. Because Carr does not contend that the transcript contains inaccuracies, Carr's argument fails. *See Willis*, 124 F.3d 202; *Heinsohn,* 132 F.3d 34.

Carr also argues that the admission of the deposition transcript violated Rule 30. This argument lacks merit. The court reporter complied with Rule 30 because she gave Carr the opportunity to review the transcript. In his opposition to PNCEF's Motion, Carr attached an email chain between himself, PNCEF's attorney, and the court reporting company. This document shows that Carr asked PNCEF's attorney when he would provide a copy of Carr's deposition transcript. PNCEF's attorney responded by informing Carr that Carr needed to order the transcript from the court reporting company. PNCEF's attorney copied a representative from the court reporting company on his response to Carr. Carr emailed the court reporting company and asked when it would provide him a copy of his deposition transcript. A representative from the court reporting company explained that Carr could purchase the transcript directly from the company. In a follow-up email, the company representative clarified that even if Carr did not want to purchase the transcript, he could come to the court reporting company's offices within 30 days to review it in person. Carr never took advantage of this option. But, as the emails indicate, Carr had the opportunity to review his transcript. Therefore, the court reporter complied with Rule 30. *See Parkland Venture*, 270 F.R.D. at 441.

Carr additionally argues that the district court erred by considering his deposition transcript because it constituted inadmissible hearsay. This argument clearly fails. Carr's deposition testimony does not constitute hearsay because it is "an opposing party's statement." Fed. R. Evid. 801(d)(2)(A); *see generally United States v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007). Therefore, the district court did not err by considering the transcript.

## C. The District Court Did Not Abuse Its Discretion by Relying on Chambers' Affidavit

### 1. Relevant Legal Principles

"Rule 26(a)(1) requires parties to disclose early in discovery persons likely to have discoverable information if the disclosing party may use that information or person to support its claim or defense." *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017) (citing Fed. R. Civ. P. 26(a)(1)(A)(i)). Rule 26(e)(1)(A) imposes a continuing obligation upon a party to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." *Emanuel v. Cty. of Wayne*, 652 F. App'x 417, 423 (6th Cir. 2016) (quoting Fed. R. Civ. P. 26(e)(1)(A)).

"Rule 37 requires trial courts to punish parties that violate this provision in Rule 26 with exclusion of evidence or witnesses, unless the sanctioned party can show that the violation is substantially justified or harmless . . . ." *Abrams*, 694 F. App'x at 982 (citing Fed. R. Civ. P. 37(c)(1)). "The burden is on the potentially sanctioned party to prove harmlessness." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). "The decision not to impose sanctions is reviewed for an abuse of discretion." *Johnson*, 325 F.3d at 782 (citing *King v. Ford Motor Co.*, 209 F.3d 886, 900 (6th Cir. 2000)).

2.      **Application to the Matter at Hand**

Carr argues that the district court abused its discretion because it considered Chambers' affidavit despite the fact that PNCEF failed to identify Chambers in its Initial Disclosures. Carr characterizes PNCEF's use of Chambers' affidavit as an "ambush" similar to "the proverbial first year torts loaded spring gun." (Def. Br. at 16–17.) In response, PNCEF argues that its failure to strictly comply with Rule 26 constituted harmless error because its Initial Disclosures named two other bank officials and disclosed all relevant information that PNCEF possessed regarding its financial dealings with Carr.

The district court did not abuse its discretion by considering Chambers' affidavit because PNCEF's failure to comply with Rule 26(a)(1) was harmless. While PNCEF did not identify Chambers in its Rule 26(a) Initial Disclosures, Carr was not prejudiced. PNCEF's Initial Disclosures identified two vice presidents for PNCEF and stated that they possessed information regarding the terms of the Mortgage Agreement, Carr's guarantees, the subsequent negotiations and forbearance agreements, and the current balance owed to PNCEF. While PNCEF ultimately submitted an affidavit from Chambers—himself a vice president for PNCEF—rather than from either of the individuals identified in the Initial Disclosures, Chambers opined on the *exact same subject matter* as the other individuals would have opined on. Moreover, Chambers exclusively opined on topics listed in the Initial Disclosures. Carr did not suffer prejudice because Chambers happened to sign the affidavit rather than one of the previously-identified corporate representatives. Furthermore, Carr did not serve written discovery on, depose, or otherwise conduct *any discovery* on the two corporate representatives that the Initial Disclosures named. Under these circumstances, Carr did not suffer prejudice from PNCEF's failure to name Chambers in its Initial Disclosures. Because PNCEF's failure to comply with Rule 26(a)(1) was harmless,

the district court did not abuse its discretion by considering Chambers' affidavit at summary judgment. *See Abrams*, 694 F. App'x at 982 (identifying a five factor test that Carr cannot survive); Fed. R. Civ. P. 37(c)(1).

Carr contends that the mere fact that the Initial Disclosures did not identify Chambers itself warrants reversal. But, as explained above, the district court did not need to exclude Chambers' affidavit because Carr did not suffer prejudice from PNCEF's failure to identify Chambers in its Initial Disclosures. *See Abrams*, 694 F. App'x at 982; Fed. R. Civ. P. 37(c)(1). Accordingly, Carr's argument fails.

## II.    Recusal

Carr argues that the district judge abused her discretion by failing to recuse herself. This Court is not persuaded by Carr's argument.

### A.    Legal Standard

This Court "review[s] a judge's denial of a disqualification motion for an abuse of discretion." *Harris v. Morris*, No. 17-1373, 2017 WL 8776683, at *2 (6th Cir. Oct. 26, 2017) (citing *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016)). "An abuse of discretion occurs when a district court commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *King*, 852 F.3d at 579 (internal quotation marks omitted) (quoting *Info-Hold*, 538 F.3d at 454).

### B.    Relevant Legal Principles

28 U.S.C. § 455(a) provides that a federal judge "shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." This Court has explained that § 455(a) "imposes an objective standard . . . ." *Gagacki*, 834 F.3d at 616 (citing *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)). Thus, "[a] judge must recuse himself only 'if a

reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 WL 8791098, at \*4 (6th Cir. Dec. 14, 2017) (quoting *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990)); *see also Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015). "The judge need not recuse himself under § 455(a) 'based on the subjective view of a party, no matter how strongly that view is held.'" *In re Polyurethane Foam Antitrust Litig.*, 2017 WL 8791098, at \*4 (quoting *Sammons*, 918 F.2d at 599).

"[A] judge is presumed to be impartial." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (citing *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)). Therefore, "[t]he burden is on the moving party to justify disqualification." *Gagacki*, 834 F.3d at 616 (citing *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999)).

### C.   Application to the Matter at Hand

Carr argues that the district court judge abused her discretion by failing to recuse herself. Carr states that he learned from a former employee of PNCEF that the judge's spouse had aircraft loans with PNCEF, that PNCEF forgave a significant portion of the loans, and that judge's spouse was "let off the hook" from a forbearance agreement because of his wife's status as a federal judge. (R. 63-3 at #1326–27.) According to Carr, § 455(a) required that the judge recuse herself because a reasonable person would question her impartiality. In response, PNCEF argues that a reasonable person would not question the judge's impartiality because (1) according to Carr's Certification, the judge's husband was one of "multiple people" with whom PNCEF settled aviation loans for less than the balance due under the loan or forbearance agreement, and (2) PNCEF offered Carr the opportunity to settle *his* aviation loan for substantially less than the original loan amount—the same favorable treatment Carr alleges the judge's husband received.

The district judge did not abuse her discretion by failing to recuse herself. While Carr alleges that the judge's husband settled his aviation loans for a substantially lower amount than he originally owed, PNCEF gave Carr himself several chances to discharge his obligations under his aviation loans for a small fraction of the amount that he actually owed. Carr cannot convincingly claim that the judge lacked partiality due to the fact that her husband allegedly received *the same opportunity* that PNCEF extended to Carr and "multiple other" people. Additionally, Carr does not allege that the judge's husband still has aviation loans with PNCEF or that he and PNCEF have any ongoing financial relationship. Furthermore, Carr has presented a paucity of evidence to substantiate his allegations; he fails to name the person who allegedly told him that PNCEF let the district judge's husband "off the hook," he does not state when the judge's husband allegedly had aviation loans with PNCEF, and he does not assert that the judge or her husband were ever aware that PNCEF let the husband "off the hook" because his wife was a federal judge. (*See* R. 65-1.) For these reasons, a reasonable person would not question the judge's impartiality. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 2017 WL 8791098, at *4. Accordingly, the judge did not abuse her discretion by failing to recuse herself. *Id.*

Carr cites *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) to support his argument. But *Liljeberg* is inapposite. In *Liljeberg*, a district judge presided over a case seeking declaratory judgment about disputed ownership of a hospital. *Id.* at 850. The judge sat on the Board of Trustees of a university that had plans to purchase land from one of the parties to the litigation. *Id.* The university's success in this potential acquisition "turned, in large part," on which one of the parties prevailed in the declaratory judgment action before the district judge. *Id.* The Supreme Court held that the district judge violated § 455(a) by failing to recuse himself because he was on the Board of Trustees of a university that had a direct financial interest in the outcome of the

litigation. *Id. Liljeberg* does not apply here. There is no evidence that the judge in this case has an interest in the outcome of the litigation.

Carr's attempt to analogize this case to *Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) is similarly unpersuasive. *Preston* involved a wrongful death lawsuit brought against the United States. *Id.* at 732. While the lawsuit named only the United States as a defendant, the United States had a contract with a third-party contractor that would indemnify the United States should the plaintiffs prevail. *Id.* at 735. Prior to joining the federal bench, the judge worked at a law firm when it represented the contractor in a state court action arising out of the same decedent's death. *Id.* at 734. The Ninth Circuit held that the judge abused his discretion by not recusing himself given that he had previously worked at a firm that represented a party with an interest in the action. *Id. Preston* does not pertain here. Unlike the judge in *Preston*, the district judge does not have an interest in the outcome of the litigation.

Carr also argues that the district judge abused her discretion by delegating the Post-Judgment Motion to the magistrate judge. Carr does not cite any authority to support his argument or explain why the district judge should not have referred the matter to the magistrate. Furthermore, given that Carr asserts that the district judge harbored bias against him, it would seem that Carr would prefer for the magistrate judge—rather than the district judge—to decide Carr's Post-Judgment Motion in the first instance. Finally, the district judge reviewed the magistrate judge's recommendation *de novo*, rendering Carr's argument moot.

## CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the district court.